### ALLEC *v.* REECE.

*(Circuit Court, S. D. California.  July 22, 1889.)*

JUSTICE OF THE PEACE—LIABILITY FOR TORTS.
> A justice of the peace is not liable in damages for causing the arrest and imprisonment, as authorized by Code Civil Proc. Cal. §§ 1993, 1994, of one who has failed to obey a subpœna issued by the justice, though the subpœna was insufficient to require the attendance of the person served, and the warrant of arrest was directed "to the sheriff or any constable," when by the statute it should have been directed to the sheriff only, as in issuing the subpœna and warrant the justice acted in his judiciary capacity.

At Law.  On demurrer to complaint.
Action for damages by Alfred Allec against O. M. Reece.
*H. M. Morgan,* for plaintiff.
*Willis & Treat,* for defendant.

ROSS, J.  The defendant was, at the times stated in the complaint, a justice of the peace for San Luis Rey township, of San Diego county, and as such, on the 7th of September, 1888, issued a subpœna for the plaintiff to appear in the said justice's court on the 10th day of September following, then and there to testify as a witness in a criminal proceeding then pending in that court, entitled *People of the State of California* v. *Jesus Fidoroa,* in which proceeding Fidoroa was charged with the crime of grand larceny.  The plaintiff herein not appearing at the time specified in the subpœna for his appearance, the justice issued a warrant, directed to the sheriff or any constable of San Diego county, commanding the arrest of the plaintiff, and that he be brought before the said court on the 11th of September, then and there to show cause why he should not be punished for contempt in disobeying the subpœna.  Under that warrant the plaintiff was arrested in Los Angeles county by the constable of San Luis Rey township, of San Diego county, and taken before the justice's court at the time named in the warrant, and was there adjudged guilty of contempt in failing to appear as a witness in obedience to the subpœna, and a fine of $30 was imposed upon him, with the alternative of imprisonment in the county jail of that county at the rate

of one day for every dollar of the fine unpaid. The plaintiff paid the fine, and was discharged. At all of the times stated the plaintiff was a resident of Los Angeles county, in which county the subpœna was served upon him. It had not indorsed upon it an order for the attendance of the witness made by the judge of the court in which the offense charged against Fidoroa was triable, nor by a justice of the supreme court of the state, nor by a superior judge thereof.

There can be no doubt of the illegality of the arrest and imprisonment of the plaintiff, and of the subsequent contempt proceedings before the justice's court: *First*, for the reason that it is provided by section 1330 of the Penal Code of California that "no person is obliged to attend as a witness before a court or magistrate out of the county where the witness resides or is served with a subpœna, unless the judge of the court in which the offense is triable, or a justice of the supreme court, or a judge of a superior court, upon an affidavit of the district attorney or prosecutor, or of the defendant or his counsel, stating that he believes the evidence of the witness is material, and his attendance at the examination or trial necessary, shall indorse on the subpœna an order for the attendance of the witness;" *secondly*, because by sections 1993 and 1994 of the Code of Civil Procedure of California every warrant to arrest or commit a witness for failure to obey a subpœna is required to be directed to the sheriff of the county where the witness may be, and not to a constable; and, *thirdly*, because under no circumstances had the constable for San Luis Rey township, of San Diego county, the legal right to execute the warrant in Los Angeles county. The liability of the constable, however, is not involved in the present case, but the question here is whether the justice of the peace is answerable in a civil action for the arrest and imprisonment of the plaintiff.

Had defendant been a judge of superior and general jurisdiction, it is clear that he would not be; for the rule laid down by the supreme court in the case of *Bradley* v. *Fisher*, 13 Wall. 335, is that "judges of courts of record of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly." The principle on which such exemption is founded and maintained rests in public policy, and was established in order to secure the independence of the judges; it being, as observed by the court in the case above cited, "of the highest importance to the proper administration of justice that a judicial officer, in exercising the authority vested in him, shall be free to act upon his own convictions, without apprehension of personal consequences to himself." With respect to judges of limited and inferior jurisdiction, however, it has been generally held that they are protected only when the act complained of was within their jurisdiction. The reasons given by Judge COOLEY, in his valuable work on Torts, why the law protects the one judge and not the other, and that one the very one who, from his higher position and presumed superior learning and ability, ought to be more free from error, are as follows:

"The inferior judicial officer is not excused for exceeding his jurisdiction, because, a limited authority only having been conferred upon him, he best observes the spirit of the law by solving all questions of doubt against his jurisdiction. If he errs in this direction, no harm is done, because he can always be set right by the court having appellate authority over him, and he can have no occasion to take hazards so long as his decision is subject to review. The rule of law, therefore, which compels him to keep within his jurisdiction at his peril, cannot be unjust to him, because, by declining to exercise any questionable authority, he can always keep within safe bounds, and will violate no duty in doing so. Moreover, in doing so he keeps within the presumptions of law, for these are always against the rightfulness of any authority in an inferior court, which, under the law, appears doubtful. On the other hand, when a grant of general jurisdiction is made, a presumption accompanies it that it is to be exercised generally, until an exception appears which is clearly beyond its intent. Its very nature is such as to confer upon the officer intrusted with it more liberty of action in deciding upon his powers than could arise from a grant expressly confined within narrow limits, and the law would be inconsistent with itself if it were not to protect him in the exercise of this judgment. Moreover, for him to decline to exercise an authority because of the existence of a question, when his own judgment favored it, would be to that extent to decline the performance of duty, and measurably to defeat the purpose of the law creating his office; for it cannot be supposed that this contemplated that the judge should act officially as though all presumptions opposed his authority, when the fact was directly the contrary." Cooley, Torts, 420.

In all this there does not appear to me to be any sound reason for denying protection to the inferior judicial officer. As has been said, the principle on which any exemption is maintained is founded in the interest of the public, and is established in order to secure independence in the judiciary. This principle, in my judgment, is as applicable to an inferior judge as to one of superior and general jurisdiction. To the extent that the former is authorized to act at all, it is just as important to the public interests, or, if less important, less only in degree, that he should be free to act upon his own convictions, without apprehension of personal consequences to himself, as that the judge of superior and general jurisdiction should be. It is all important that every branch of the judiciary should enjoy this freedom. While it has undoubtedly been generally held that the exemption does not extend to inferior judicial officers, that it has been so extended is seen from the case of *Scott* v. *Stansfield*, L. R. 3 Exch. 220, in which case the court, in holding that the judge of a county court, which was a court of record, was not liable to a civil action for slander for words spoken in his judicial capacity, even if spoken falsely and maliciously, and without any reasonable, probable, or justifiable cause, and without any foundation whatever, and not *bona fide* in the discharge of his duty as judge, and were wholly irrelevant to the matter before him, said:

"The question arises, perhaps, for the first time, with reference to a county court judge; but a series of decisions, uniformly to the same effect, extending from the time of Lord COKE to the present time, establish the general proposition that no action will lie against a judge for any acts done or words spoken

in his judicial capacity in a court of justice. This doctrine has been applied, not only to the superior courts, but to the court of a coroner, and to a court-martial, which is not a court of record. It is essential in all courts that the judges who are appointed to administer the law should be permitted to administer it under the protection of the law, independently and freely, without favor and without fear. This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences."

In applying the principle, however, to the acts of any judge, the distinction so clearly pointed out by Mr. Justice FIELD in delivering the opinion of the court in *Bradley* v. *Fisher, supra,* must be observed between excess of jurisdiction and the clear absence of all jurisdiction over the subject-matter. "Where there is clearly no jurisdiction over the subject-matter," said the learned justice, "any authority exercised is a usurped authority, and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are generally as much questions for his determination as any other questions involved in the case, although upon the correctness of his determination in these particulars the validity of his judgments may depend. Thus if a probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offenses, jurisdiction over the subject of offenses being entirely wanting in the court, and this being necessarily known to its judge, his commission would afford no protection to him in the exercise of the usurped authority. But if, on the other hand, a judge of a criminal court, invested with general criminal jurisdiction over offenses committed within a certain district, should hold a particular act to be a public offense, which is not by the law made an offense, and proceed to the arrest and trial of a party charged with such act, or should sentence a party convicted to a greater punishment than that authorized by the law upon its proper construction, no personal liability to civil action for such acts would attach to the judge, although those acts would be in excess of his jurisdiction, or of the jurisdiction of the court held by him; for these are particulars for his judicial consideration whenever his general jurisdiction over the subject-matter is invoked. Indeed, some of the most difficult and embarrassing questions which a judicial officer is called upon to consider and determine relate to his jurisdiction, or that of the court held by him, or the manner in which the jurisdiction shall be exercised. And the same principle of exemption from liability which obtains for errors committed in the ordinary prosecution of a suit, where there is jurisdiction of both subject and person, applies in cases of this kind, and for the same reasons."

In the present case the defendant, as justice of the peace, had before him, for examination under the state statutes, a criminal charge. It is not claimed that he did not have jurisdiction of that proceeding. For

its proper investigation witnesses were required, and to procure their attendance he had the power to issue subpœnas. Pen. Code, § 1326. For a witness duly subpœnaed, who should fail to attend, he was by the statutes empowered, upon proof of the service of the subpœna and of the failure of the witness, to issue a warrant for the arrest of the witness, addressed to the sheriff of the county where he was to be found, (sections 1993, 1994, Code Civil Proc.;) and by section 1331 of the Penal Code it is provided that disobedience to such subpœna may be punished by the court or magistrate as a contempt. Whether the subpœna had been so served as to authorize the issuance of a warrant was a matter for judicial ascertainment by the justice. The direction of the warrant to the sheriff or any constable of San Diego county was a clear violation of sections 1993 and 1994 of the Code above cited, but this was done in his judicial capacity. The witness, being a resident of another county, was by virtue of section 1330, *supra*, not compelled to attend the court of defendant in the absence of an order of the judge of the court where the offense under investigation was triable, or of a justice of the supreme court of the state, or of a state superior judge, indorsed on the subpœna; and in the absence of such an order the justice of the peace was clearly in error in adjudging the witness guilty of contempt in failing to obey the subpœna. But to pass upon the contempt matter it was necessary for the justice to ascertain the facts in respect to the subpœna, and whether or not the required order for the attendance of the witness was indorsed on it, and all of this he did in his judicial capacity. When that is the case, the grossness of the error of such determination, and of the judgment following it, will not render the officer liable in a civil action for damages, even if the exemption already referred to does not extend to him. From these views it results that the demurrer must be sustained, and the suit dismissed, with costs to defendant. So ordered.