CARTWRIGHT et al. v. CANODE.

(Court of Civil Appeals of Texas. Ft. Worth. April 29, 1911. Rehearing Denied May 27, 1911.)

1. STATUTES (§ 63*)—EFFECT OF UNCONSTITUTIONALITY—EXECUTION OF WARRANT.

While persons called on by officers to aid in the execution of a warrant are generally protected in giving such aid by the warrant, when it is not invalid on its face, and when issued by a magistrate having jurisdiction, yet the section of a statute under which a warrant for search and seizure is issued being unconstitutional, and therefore as if it had never been, though not at the time adjudged unconstitutional, such statute and warrant furnishes no protection to persons who, after the search and seizure, at the request of the officers executing the warrant, assist in removing the articles seized.

[Ed. Note.—For other cases, see Statutes, Dec. Dig. § 63;* Constitutional Law, Cent. Dig. § 47.]

2. INTOXICATING LIQUORS (§ 257*)—LOSS OF PROFITS—QUESTION FOR JURY.

Evidence of damages by loss of patronage from execution of a void warrant for search of plaintiff's hotel and seizure of intoxicating liquors therein held sufficient to go to the jury.

[Ed. Note.—For other cases, see Intoxicating Liquors, Dec. Dig. § 257.*]

3. EVIDENCE (§ 253*)—ADMISSIBILITY—DECLARATIONS OF THIRD PERSONS.

Defendants having been among those who assisted officers in carrying away the liquor which they had seized, under a void warrant for search of plaintiff's hotel and seizure of intoxicating liquors therein, evidence that some of those assisting in carrying it away publicly remarked that "it was a regular blind tiger that was being run at the hotel" was admissible against defendants, in an action for damages by loss of patronage, as each and all of those so acting together must rest under the burden of what occurred at the time.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 994–1002; Dec. Dig. § 253.*]

4. DAMAGES (§ 159*)—EVIDENCE.

Plaintiff, suing for injury to his hotel business by a raid under a void warrant for search of his hotel and seizure of liquor therein, may give his opinion, without pleading the facts on which it is based, that it was injured thereby.

[Ed. Note.—For other cases, see Damages, Dec. Dig. § 159.*]

5. EVIDENCE (§ 158*)—BEST AND SECONDARY EVIDENCE.

Plaintiff's testimony that his hotel business was injured through loss of patronage by a raid

---

*For other cases see same topic and section NUMBER in Dec. Dig. & Am. Dig. Key No. Series & Rep'r Indexes

on the hotel is not objectionable because of his failure to introduce his hotel register and other books showing the amount of his business, as it cannot be said they constitute the only, or even the best, evidence of the fact.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 471–526; Dec. Dig. § 158.*]

Appeal from District Court, Potter County; J. N. Browning, Judge.

Action by H. P. Canode against J. W. Cartwright and others. Judgment for plaintiff. Defendants appeal. Affirmed.

Madden, Trulove & Kimbrough and F. M. Ryburn, for appellants. Reeder & Graham, for appellee.

CONNER, C. J. Appellee, H. P. Canode, instituted this suit in the district court of Potter county against appellants J. W. Cartwright, S. P. Vinyard, W. A. Askew, R. H. McAlpine, W. D. Twitchell, Howard Trigg, W. H. Caviness, and W. H. Lewis, to recover damages for the alleged wrongful acts of appellants in breaking into a private storeroom in appellee's hotel, known as the Amarillo Hotel, on September 10, 1908, and taking therefrom wines, whiskies, beer, etc., and transporting the same through the streets of Amarillo for a distance of about three blocks, thus publishing appellee's hotel as a blind tiger and causing his guests to leave, and to otherwise injure his business. Appellee itemized his damages as follows: Value of stock of liquors seized and carried away; $1,500; loss of patronage occasioned by the disturbance at the hotel at the time of the raid, $500; injury to his business caused by the notoriety given the occurrence in carrying away the goods saved, $25,000; exemplary damages, $25,000.

Appellants pleaded the general denial, and specially denied that there was any concerted action or agreement between them to do the acts complained of by appellee, and that, if any act was done by them as alleged, it was so done at the request and under the direction of known officers of the law, viz., E. Putnam and O. J. Rountree, special officers known as "Texas Rangers," who were acting under and by virtue of a "search and seizure writ, duly issued and legal upon its face." A return of the goods seized was also alleged.

A trial was had before a jury, and a verdict returned in appellee's favor against all of the defendants for the sum of $1,600 as actual damages, and judgment was rendered in accordance therewith.

At the time of the occurrences under review, the city of Amarillo was operating under a published local option law, and it is undisputed that the Rangers named in the special plea of appellants in due form sued out a warrant on its face authorizing a search of appellee's premises and a seizure of intoxicating liquors, as provided by sec-tion 2 of the act approved April 5, 1907 (see General Laws 1907, p. 157). It is also undisputed that, with this warrant in hand and acting by virtue thereof, said Rangers forcibly broke open a storeroom in appellee's hotel and seized one or more drayloads of wines, whisky, beer, and perhaps other intoxicating liquors, found therein. Appellee did not sue either of the Rangers so acting, but specially alleged that the defendants advised and agreed to the issuance of the warrant and to the seizure made. The proof, however, affords little or no warrant for this allegation. On the contrary, we think the record only supports the conclusion that after the forcible entrance and seizure stated appellants, without malice and in good faith and at the request of said Rangers, assisted in removing the intoxicating liquors mentioned into drays, and thereafter accompanied the conveyances to a place where they were temporarily deposited. It is also undisputed that the liquors were later returned without injury, and the court peremptorily instructed the jury not to find damages because of a retention of the property.

[1] Appellants stress the point that under the circumstances above stated they are not, in any event, liable for more than nominal damages; the contention being that it was their duty as good citizens to obey the officers of the law in rendering assistance when requested. Numerous authorities might be cited to the effect that peace officers, or persons called by them to aid in the execution of process, will be protected by such process, when not invalid on its face and when issued by a magistrate having jurisdiction, however irregular or even invalid the antecedent proceedings may be, and in such cases one called upon to aid the officer may do so freely, and is not required to examine the writ in order to judge of its validity. For to so require or to accord such right would often defeat the object of the law in giving an officer the power to call others to his aid. See Reed v. Rice, 2 J. J. Marsh. (Ky.) 44, 19 Am. Dec. 122; Tryon v. Pingree, 112 Mich. 338, 70 N. W. 905, 37 L. R. A. 222, 67 Am. St. Rep. 398; Firestone v. Rice, 71 Mich. 377, 38 N. W. 885, 15 Am. St. Rep. 266. But, while this is generally true, we must sustain the instruction of the court to the effect that the affidavit and warrant for the search and seizure was wholly void and unauthorized. The section of the act before cited upon which these proceedings were based has, since the seizure under consideration, been expressly declared to be unconstitutional. See Dupree v. State, 102 Tex. 455, 119 S. W. 301. And, says Mr. Cooley in his work on Constitutional Limitations, p. 222: "When a statute is adjudged to be unconstitutional, it is as if it had never been. Rights cannot be built up under it; contracts which

depend upon it for their consideration are void; it constitutes a protection to no one who has acted under it; and no one can be punished for having refused obedience to it before the decision was made. And what is true of an act void in toto is true also as to any part of an act which is found to be unconstitutional, and which, consequently, is to be regarded as having never, at any time, been possessed of any legal force."

A few cases are to be found which seem to support the contention that acts done by ministerial officers or those acting in a mere servile capacity, as were appellants, under a law that has been promulgated, but not yet declared invalid, will be protected. See Sessums v. Botts, 34 Tex. 335, and Henke v. McCord, 55 Iowa, 378, 7 N. W. 623. But under our form of government the Constitution, of which all persons must take notice, is the supreme law of the land, and no jurisdiction or power can be vested in a magistrate or other person in opposition to its command, and we think the better reason, as well as the great weight of authority, supports the statement of Mr. Cooley that, where, as here, the legislative act is unconstitutional and hence wholly void, the law is "as if it had never been; that it can constitute a protection to no one who has acted under it." See Little v. Barreme, 2 Cranch, 170, 2 L. Ed. 243; Kelly v. Bemis, 4 Gray (Mass.) 83, 64 Am. Dec. 50; Rhody Ely alias Holly v. Matthew Thompson et al., 3 A. K. Marsh. (Ky.) 70; Beavers v. Goodwin, 90 S. W. 931, and authorities cited in note 2 in support of the text by Mr. Cooley, above quoted. It follows, then, that the warrant under which the Rangers were acting was wholly without force, and appellants at their peril complied with the request made to assist in its execution. The court, therefore, under the undisputed evidence, might have peremptorily instructed the jury that appellants were liable at all events for the actual damage done to appellee, if any. So that the only assignments that we need to consider are those which raise questions relating to the measure of appellee's damage.

The court thus submitted the measure of damage: "If you find for the plaintiff for actual damages, then you will find for him such amount as will fairly and reasonably compensate him for the actual injuries sustained by reason of the breaking into his private storeroom and the seizure and removal of his goods, wares, and merchandise from his possession, and for such humiliation and mental anguish, if any, as he may have suffered by reason of the trespass and seizure; and for such damage, if any, as he may have sustained to his business and reputation as a hotel keeper. And if you find and believe from the testimony that the trespasses, etc., were willfully or maliciously done, or done for the purpose or with the intent to humiliate, harass, or injure the plaintiff, then you may give such additional damages as you may see proper as vindictive or punitory damages. The goods in question having been returned to plaintiff, and no proof having been submitted as to any damage done them, or any damage done the plaintiff on account of their detention, you will not consider these as items of damage in making up your verdict. You are further charged that in case you find for plaintiff, but fail to find that he has sustained any material actual damage, you will in such case return a verdict in his favor for nominal damages, which means any insignificant sum. In this connection you are also charged that you cannot find vindictive or punitory damages for plaintiff where you fail to find actual damages."

[2] The only objection made to this charge is to the effect that there is no evidence "of any damages sustained that would authorize such instruction," but in this we feel unable to concur. It appears without dispute that the levy and seizure attracted much local attention, and that at least some of the persons assisting in removing the goods declared the place a "blind tiger," and appellee testified to the effect that he thereby lost patronage as a hotel keeper, and that the notoriety given the raid had since continued to injure him in his patronage. We cannot say as a matter of law that such results were not natural consequences of the trespass shown, or that no such result in fact followed.

[3] Objection was made to the remarks of those carrying away the goods to the effect that "it was a regular blind tiger that was being run at the hotel," on the ground that it was not shown that "appellants made the remarks referred to." While the witness was unable to identify the particular individuals making the remarks, he was clear in the statement that they were made by some of those who were assisting in carrying away the goods, and, as it is undisputed that appellants were parties engaged in this labor, we think each and all, acting together, must rest under the burden of what occurred at the time.

[4, 5] The objection that the facts upon which appellee based his opinion that the raid had injured his business were not pleaded is without merit. Nor do we think appellee's testimony on this subject objectionable because of a failure to introduce his hotel register and other books showing the amount of his business. These, we think, might have been properly admitted, but it cannot be said that the books constituted the only evidence, or even the best evidence, of the fact sought to be proved. Appellee complained of a failure of patronage which in the constantly changing condition of the times would not necessarily appear on his books.

Appellants' good faith, as stated, can scarcely be questioned, and the case may seem to be a hard one; but, among the cher-

ished principles of our government, one that has been crystalized in both national and state Constitutions, and thus placed beyond power of limitation, is that all citizens shall be secure in their persons, houses, and possessions from all unreasonable seizures or searches, and appellants are in the legal attitude of violating this principle and of participating in an intrusion and seizure wholly without warrant of law. This being true, individual loss is to be endured, rather than impairment of a fundamental doctrine; and, no reversible error as assigned having been found, the judgment must be affirmed.