[Crim. No. 494.   First Appellate District.—May 29, 1914.]

## THE PEOPLE, Respondent, v. AUGUST LUSINCHI, Appellant.

CRIMINAL LIBEL—USE OF INNUENDOES—SUFFICIENCY OF INFORMATION—DEMURRER.—An article, alleged to be defamatory and to have been published of and concerning another, cannot have its words and phrases enlarged beyond their natural import and plain and ordinary meaning by innuendo, and in case this is attempted in the information the remedy is by way of demurrer; but if the article does not require the use of innuendoes to make it actionable, the fact that the drawer of the information makes use of innuendoes in aid of the actual intent and meaning of the article complained of neither strengthens nor weakens the information as a pleading.

ID.—NEWSPAPER ARTICLE CHARGING MISAPPROPRIATION OF FUNDS BY CHAIRMAN OF COMMITTEE.—A newspaper article headed, "Make a clean breast of it," and directed to an individual by name, referring to "the mysterious disappearance of six hundred dollars of the money received by and tabulated in the report of the finance committee of the 14th of July celebration," of which such person was the chairman; urging him to tell "into which pocket or pockets have strayed the six hundred dollars"; averring that "mistakes, irregularities, forgeries, and even embezzlements of money have been ascertained in the published statements of account of this committee"; demanding an explanation of the person; asserting that "an honest man never hesitates to justify himself when he is accused of committing offenses such as these with which he has been charged"; asserting that he is "obstinately resolved to be mum on this subject"; and finally closing as it began with the insistence that the person named should "make a clean breast of it," comes within section 248 of the Penal Code relating to criminal libel, and does not require the use of innuendoes to render it actionable.

ID.—PRIVILEGED COMMUNICATION—INSTRUCTIONS.—Such article is not a communication to a person or persons interested therein, which is privileged under section 256 of the Penal Code; and in a criminal prosecution for the publication of the article, it is proper to refuse an instruction referring to the asserted right of a newspaper to fairly and justly "criticise" the actions of those committees or members of committees having in charge the celebrations of holidays and anniversaries, and stating that the criticisms and comments of the press upon acts and conduct of persons in charge of public celebrations are privileged communications.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. William P. Lawlor, Judge.

The facts are stated in the opinion of the court.

Costello & Costello, and P. A. Bergerot, for Appellant.

U. S. Webb, Attorney-General, and John H. Riordan, Deputy Attorney-General, for Respondent.

RICHARDS, J.—This is an appeal from a judgment of conviction of criminal libel.

The facts leading up to the publication complained of are briefly these: The defendant and one Leon L. Rey were publishers of rival French newspapers in the city of San Francisco and were at swords' points in journalism. Leon L. Rey had been the chairman of a committee which had in charge the finances of a celebration of the fall of the Bastille, during the course of which the sum of six hundred dollars of the funds provided for the celebration and passing through the hands of the committee, disappeared. The whereabouts of this money not having been explained by the chairman of the committee to the satisfaction of the defendant, as editor of *Le Franco-Californien,* he published in his said newspaper the article complained of in this case. Thereupon he was arrested, tried, and convicted of criminal libel, and fined the sum of five hundred dollars, from which judgment he prosecutes this appeal.

The first contention of the appellant is that the article complained of does not in itself contain matter which was sufficient to bring its writer and publisher within the terms of the section of the Penal Code defining criminal libel, and that the general demurrer to the information ought therefore to have been sustained. In this connection the appellant contends that the prosecution, in drawing the information, and realizing the insufficiency of the article to support a charge of criminal libel, undertook by innuendoes to eke out the infirmities of the article by imputing to its phrases a criminal meaning which their words do not warrant, and that for this additional reason the demurrer to the information should have been sustained.

It will be conceded that an article, alleged to be defamatory and to have been published of and concerning another, cannot have its words and phrases enlarged beyond their natural

import and plain and ordinary meaning by innuendo, and that in case this is attempted in the information the remedy is by way of demurrer. With this in mind we have given to the article in question a most careful reading after eliminating from it the innuendoes of the information, and also the excursions into editorial flippancies with which it is replete. Thus stripped down to its real intendment and naked import, we are satisfied that the article does quite clearly impute to the subject of it a course of acts, concealment, and conduct which, if not actually criminal, do strongly tend to impeach the honesty, integrity, virtue, and reputation of Leon L. Rey, and thereby expose him to public hatred, contempt and ridicule. The article is headed "Make a clean breast of it." It is directed to Leon L. Rey, as its subject, by name; it refers to "the mysterious disappearance of $600 of the money received by and tabulated in the report of the finance committee of the 14th of July celebration," of which Leon L. Rey was the chairman; it urges him to tell "into which pocket or pockets have strayed the $600"; it avers that "mistakes, irregularities, forgeries and even embezzlements of money have been ascertained in the published statements of account of this committee;" it demands an explanation of Leon L. Rey; and in doing so asserts that "an honest man never hesitates to justify himself when he is accused of committing offenses such as these with which he has been charged"; it states that Leon L. Rey is "obstinately resolved to be mum on this subject," and finally closes as it began with the insistence that Leon L. Rey should "make a clean breast of it."

We think that a newspaper article couched in the foregoing phrases and aimed at the complaining witness, comes clearly within the provisions of section 248 of the Penal Code relating to criminal libel, and that such article does not require the use of innuendoes to render it actionable; and hence that the fact that the drawer of the information made use of innuendoes in aid of the actual intent and meaning of the article complained of neither strengthens nor weakens the information as a pleading; and that both the general and special demurrers thereto were therefore properly overruled. (*Tonini* v. *Cavasco,* 114 Cal. 266, [46 Pac. 103], and cases cited.)

The next contention of the appellant is that the court erred in refusing to give certain instructions to the jury at the de-

24 Cal. App.—40

fendant's request.   These instructions, of which there are several, refer to the asserted right of a newspaper to fairly and justly "criticise" the actions of those committees or members of committees having in charge the celebration of holidays and anniversaries; and that the defendant, as the editor of such paper, had the right to direct public attention to the actions and conduct of the committee of which Leon L. Rey was chairman, in relation to the alleged disappearance of a portion of the funds with which he was intrusted, and to call upon him and his committee for an explanation, and to comment upon his refusal to give such explanation for the enlightenment of the readers of the newspaper and of the public generally, in response to the duty which the newspaper owes to its subscribers and the public in that regard; and that such a publication is a privileged communication.   The two-fold vice of the series of instructions of which the foregoing is a brief synopsis, consists, first, in the use of a term which in law has no defined meaning, that is the word "criticise"; and, secondly, consists in the suggestion that the criticisms and comments of the press upon the acts and conduct of persons in charge of public celebrations are privileged communications. The law defines criminal libel to be "a malicious defamation tending to impeach the honesty, integrity, virtue or reputation of one who is alive, and thereby to expose him to public hatred, contempt or ridicule."   (Pen. Code, sec. 248.)   The comprehensive terms of this section of the code permit no exception in favor of those who may be publishers of newspapers as distinguished from the disseminators of written or printed matter in any other form.   The thing, by whomever published and in whatever form, must be such in point of truth and of intent that it will pass through the meshes of this section of the Penal Code, or it will be criminal libel; unless it shall also be found to come within the terms of those sections of the code which define privilegèd publications.   The article in question does not purport nor pretend to be a report of any judicial, legislative, or other public official proceeding; and it has never yet been held, so far as the industry of counsel discloses, that a mere newspaper publication of the kind in question is such a communication to a person or persons interested therein, as would come within the provisions of section 256 of the Penal Code.   The proffered instructions of the defend-

ant dealing with this branch of the case were therefore properly refused.

As to the other proposed instructions of the defendant which were also refused by the trial court, we find their essential subject matter to have been quite fully covered by the instructions which the court gave to the jury upon its own motion.

The judgment and order are affirmed.

Lennon, P. J., and Kerrigan, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on June 27, 1914, and a petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on July 28, 1914.