**REILLY v. UNITED STATES FIDELITY & GUARANTY CO., et al. (two cases).**

(Circuit Court of Appeals, Ninth Circuit. October 11, 1926.)

Nos. 4826, 4827.

1. **Appeal and error** ⬀351(2).

Writ of error, allowed within statutory time after judgment, will not be dismissed because writs and citations were not issued within such time.

2. **False imprisonment** ⬀2.

"False imprisonment" is unlawful arrest or detention of person without warrant or by illegal warrant or warrant illegally executed.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, False Imprisonment.]

3. **False imprisonment** ⬀7(3).

Arrest by officer under voidable process or process, invalidity of which does not appear on its face, does not render him liable, although he may be liable for false imprisonment under warrant void on its face.

4. **False imprisonment** ⬀7(3).

Officer serving warrant regular on its face *held* not liable for false imprisonment.

5. **False imprisonment** ⬀7(2)—Magistrate issuing warrant for arrest for criminal libel held not liable for false imprisonment (Pen. Code Cal. §§ 248, 251, 1426).

Magistrate issuing warrant for arrest in criminal libel proceeding *held* not liable for false imprisonment, as complaint was not wholly void, though defective, in view of Pen. Code Cal. § 251, providing jury shall determine law and facts, section 248 defining libel and section 1426 as to requisites of complaint.

6. **False imprisonment** ⬀15(1).

District attorney *held* not liable in civil action for false imprisonment for having appeared in prosecution for criminal libel in course of his official duties.

In Error to the District Court of the United States for the Southern Division of the Northern District of California; Frank H. Kerrigan, Judge.

Separate actions by Philip Reilly against the United States Fidelity & Guaranty Company and others, consolidated for trial. Judgments sustaining demurrers to the complaints, and plaintiff brings error. Affirmed.

Raine Ewell, of San Francisco, Cal., for plaintiff in error.

Ezra W. Decoto, Earle Warren, and J. F. Coakley, all of Oakland, Cal., for defendants in error United States Fidelity & Guaranty Co. and Maryland Casualty Co.

Leon Gray and Raymond Salisbury, both of Oakland, Cal., for defendant in error National Surety Co.

Before GILBERT, HUNT, and RUDKIN, Circuit Judges.

HUNT, Circuit Judge. These are writs of error to review judgments in favor of defendants below, entered in consequence of sustaining demurrers to complaints in two actions (consolidated for hearing) for assault and false imprisonment. Defendants are sureties upon the several official bonds of the officials hereinafter named.

[1] As writs of error were prayed for and allowed on November 20, 1925, and within the statutory time after the judgments were entered, the fact that the writs and citations were not issued until January 7, 1926, does not require dismissal of the writs and the motion to dismiss is denied. Cardona v. Quinones, 240 U. S. 83, 36 S. Ct. 346, 60 L. Ed. 538. The facts as stated in the complaints may be summarized as follows:

Decoto was district attorney for Alameda county, Cal.; Hennessy was an ex officio justice of the peace and judge of the police court of the city of Oakland; Edgar was acting justice of the peace, and was authorized to act as judge of the police court of Oakland in place of Hennessy; Drew was acting chief of police of the city of Oakland. It is alleged that in September, 1924, in Oakland, "while acting by virtue of their respective offices, and acting respectively in the line of their official duties in such respective offices, yet * * * in violation of their respective oaths of office and of each of their official bonds, * * * and in a malicious and unlawful conspiracy falsely to imprison and assault plaintiff and to convict him of a crime of which they knew he was innocent, and * * * knowing they had no jurisdiction over the

person of plaintiff, Decoto and Hennessy and one Finger did maliciously * * * and unlawfully assault and falsely imprison plaintiff upon a false accusation in writing prepared by Decoto. * * * "

The writing was a complaint filed in the police court of Oakland, entitled "People of the State of California, Plaintiff, v. Philip Reilly, Defendant." It was signed and verified by Finger, and charged that Reilly, editor and publisher of a certain newspaper at Oakland, printed and published a certain malicious and defamatory libel, with malicious intent to injure Finger and to expose him to public hatred and ridicule. The published article was entitled "The Vamp Finger," and after referring to Finger as being in charge of a training school for a named college, and referring to him as "the fawning kind," the text continued in substance: Two girls who attended a named college had occasion to see Finger in his office, and upon entering "caught the index Finger * * * in fond embrace with one of the pretty female teachers." When the students came upon "the love tryst," there was a "quick break-away. * * * Some point the finger of shame at Finger for getting caught, while others, with the love of adventure, are making dates with this real he-man. * * * The average man has sense enough to pull down the blinds or display a sign of 'Knock.' * * * There is only one reason why the spooning was on such a careless scale; the visitors were not supposed to go there, or it was a common occurrence."

It is alleged that Hennessy issued a warrant of arrest, and that Drew, knowing that the complaint did not state an offense, arrested and caused the imprisonment of plaintiff, with intent on the part of the "conspirators" to convict Reilly of the crime of libel; that Drew and Decoto and others named, aided in the conspiracy and conspired "to procure a biased jury to convict," by drawing women as jurors and excluding men; that plaintiff's motion to dismiss for lack of jurisdiction was denied and the justice, "acting under color of his office," ordered a trial; that a jury was impaneled; that the justice maliciously compelled plaintiff to be tried and to be falsely imprisoned. It is further alleged that the complaint against Reilly failed to state an offense, all of which was known by the conspirators at the time; that during the trial the conspirators used perjured testimony; that by reason of the several acts of the conspirators and the officials "acting in concert, by virtue of their offices, under color of their authority and in line of their official duties," committed breaches of their official bonds for which they and their sureties are liable.

[2-4] False imprisonment, as defined in Donati v. Rieghetti, 9 Cal. App. 45, 97 P. 1128, is the unlawful arrest or detention of a person without warrant or by an illegal warrant or by a warrant illegally executed. The court added that if the imprisonment is under lawful process, but the action has been instituted and carried on maliciously and without probable cause, it is malicious prosecution. The essence of the wrong consists in depriving one of his liberty without lawful justification. Malice is not an essential element in a charge of false imprisonment, and its existence or nonexistence is immaterial, except as bearing upon the question of damages; and where it appears that a defendant has acted by virtue of legal process, the action must fail no matter how evil the motive of defendant may have been. 11 R. C. L. 790 et seq.; Tryon v. Pingree, 112 Mich. 338, 70 N. W. 905, 37 L. R. A. 222, 67 Am. St. Rep. 398; Page v. Citizens' Banking Co., 111 Ga. 73, 36 S. E. 418, 51 L. R. A. 463, 78 Am. St. Rep. 144. The general rule is that if an officer arrests one under a warrant absolutely void on its face he may be liable for false imprisonment. But if the arrest is made under a process that is voidable merely, or, if void, the fact does not appear on the face of the writ, the officer will be protected. He cannot be permitted to refuse to serve a writ because of his own belief that the magistrate issuing the writ has no jurisdiction. Emery v. Hapgood, 7 Gray (Mass.) 55, 66 Am. Dec. 459.

Bigelow on Torts, p. 348, says: "To put the case in the form of a more general proposition, as laid down upon great consideration, a ministerial officer is protected in the execution of process whether the same issues from a court of limited or of general jurisdiction, though such court have not, in fact, authority in the particular instance, provided that, on the face of the process, it appears that the court has jurisdiction of the subject matter and nothing appears therein to apprise the officer that the court has not authority to order the arrest of the party named in the process." Brown v. Hadwin, 182 Mich. 491, 148 N. W. 693, L. R. A. 1915B, 505. Applying the proposition to the present case, inasmuch as the warrant was regular on its face and disclosed no want of jurisdiction in the magistrate who issued it, the officer who served the

process could not be held for false imprisonment.

[5] Nor could the action be maintained against the magistrate who issued the warrant or the prosecuting attorney. The Penal Code of California (section 248) defines libel as a malicious defamation, expressed either by writing or printing, or by signs or pictures, tending to blacken the memory of one who is dead, or to impeach the honesty, integrity, virtue, or reputation, or publish the natural or alleged defects of one who is alive, and thereby expose him to public hatred, contempt, or ridicule. The offense is a misdemeanor, of which the justice's court has jurisdiction. Under section 1426 of the Penal Code of California, a complaint under oath before a justice's court or a police court must set forth the offense charged with such particularity as to time, place, person, and property as to enable the defendant to understand distinctly the character of the offense complained of. By section 251 the jury have the right to determine the law and the facts.

It may be that the complaint filed in the justice's court was defective, but it cannot be said as a matter of law that the facts alleged stated no offense under the statute defining criminal libel, and was therefore wholly void. Granting, of course, that the publication was not libelous per se; nevertheless, the language may well have been considered as tending to impeach the integrity, virtue, and reputation of Finger, and to expose him to public hatred, contempt, and ridicule. People v. Lusinchi, 24 Cal. App. 623, 142 P. 113. It is difficult to think of anything more injurious to the reputation, standing, and character of a male teacher at a girls' school than to publish that he has been unduly familiar with a female teacher connected with the institution. At least, the libelous character was a question dependent upon the judgment of the jury. Greenleaf on Evidence (15th Ed.) § 168. Jurisdiction of the subject-matter having been in the police court (St. Cal. 1885, p. 213, § 2, subd. 3), an action would not lie against the magistrate.

In Allec v. Reece (C. C.) 39 F. 341, Judge Ross considered the extent to which the liability of courts should be carried for judicial acts. He held that there was no sound reason for denying protection to inferior judicial officers, as well as those of courts of record or superior or general jurisdiction, for judicial acts. After stating that the principle on which any exemption is maintained is founded in the interest of the public, and is established in order to secure independence in the judiciary, he continued: "This principle, in my judgment, is as applicable to an inferior judge as to one of superior and general jurisdiction. To the extent that the former is authorized to act at all, it is just as important to the public interest—or, if less important, less only in degree—that he should be free to act upon his own convictions, without apprehension of personal consequences to himself, as that the judges of superior and general jurisdiction should be."

The learned judge pointed out that there was a distinction between excess of jurisdiction and the clear absence of jurisdiction over the subject-matter, and upon the authority of Bradley v. Fisher, 13 Wall. 335, 20 L. Ed. 646, affirmed the principle that where there is clearly no jurisdiction over the subject-matter, any authority exercised is a usurped authority and for the exercise of such authority, when the want of jurisdiction is known to the judge, no excuse is permissible. But where jurisdiction over offenses committed in a certain district is invested by law in the judge, or in the court which he holds, the manner and extent in which jurisdiction shall be exercised are generally as much questions for his determination as any other question involved in the case.

In Hofschulte v. Doe (C. C.) 78 F. 436, Judge Morrow, sitting in the District Court, cited Allec v. Reece, supra, and adhered to the rule that when a court, though of inferior and local jurisdiction, having general jurisdiction with respect to the violation of the ordinances of the town, entertains a complaint and thereupon issues process fair on its face to an officer, the process is a justification to the officer in committing the acts thereby required, notwithstanding the ordinances under which the court acts are invalid, and no action will lie against the officers or the sureties on their bonds for the acts done pursuant to such process. In Case v. Bush, 93 Conn. 550, 106 A. 822, the court held that a probate judge was not answerable in a civil suit for a judgment rendered by him in his judicial capacity, however erroneous, or in excess of jurisdiction, provided he had jurisdiction of the subject-matter and of the parties.

In Curnow v. Kessler, 110 Mich. 10, 67 N. W. 982, an action for malicious arrest and prosecution, the court held that the immunity to a judicial officer, who acts within the scope of his jurisdiction, is not to be

affected by the motive with which it is alleged the officer performed his duty. The court said: "If the officer be in fact corrupt, the public has its remedy; but the defeated suitor cannot be permitted to obtain redress against the judge by alleging that the judgment against him was the result of corrupt or malicious motives." McIntosh v. Bullard et al., 95 Ark. 227, 129 S. W. 85; Michael v. Bacon, 5 Ga. App. 331, 63 S. E. 228. The doctrine approved in the cases cited, and which we believe to be just, is sustained in the recent decisions in Platz v. Marion, 35 Cal. App. 241, 169 P. 697, and Yaselli v. Goff, (C. C. A. 2) 12 F.(2d) 396.

[6] The prosecuting attorney was not liable in a civil action. Whatever he did appears to have been done in the course of his official duties. 18 C. J. p. 1318; Griffith v. Slinkard, 146 Ind. 117, 44 N. E. 1001; Parker v. Huntington, 2 Gray (Mass.) 124; Yaselli v. Goff, supra. We conclude that the principals upon the bonds sued upon were exempt from civil liability, and that as a consequence the sureties cannot be held liable. Platz v. Marion, supra; County of Sonoma v. Hall, 132 Cal. 589, 62 P. 257, 312, 65 P. 12, 469.

The judgments are affirmed.