[S. F. No. 220. ' Department Two.—September 17, 1896.]

M. G. TONINI, Respondent, v. GIOVANNI B. CEVASCO et al., Appellants.

LIBEL—DISCHARGE FOR REPREHENSIBLE CONDUCT—CONFLICTING EVIDENCE —REVIEW UPON APPEAL.—In an action for libel in falsely publishing that plaintiff was discharged from employment for reprehensible conduct, where the evidence is conflicting upon the main issues of fact, as to whether plaintiff was discharged as an employee, and as to whether the alleged libelous matter was true, a verdict in favor of the plaintiff will not be disturbed upon appeal.

ID.—EVIDENCE—CROSS-EXAMINATION OF DEFENDANT—TRUTH OF LIBELOUS MATTER.—A defendant accused of libel, when called as a witness for the plaintiff, cannot be asked on cross-examination as to the truth of the alleged libel, where nothing was asked him in chief about its truth.

ID.—HOSTILITY OF WITNESS—ATTACHMENT UPON NOTE.—When a witness has already testified that he is unfriendly with one of the parties, it is not prejudicial error to refuse to permit him to be asked if such party had not sued him on a note and attached his property.

ID.—CROSS-EXAMINATION OF PLAINTIFF ON REBUTTAL — ADVERTISEMENT AFTER SUIT.—On cross-examination of plaintiff at the close of rebuttal, it is not competent to ask him for the first time whether he had not published an advertisement in another paper after the commencement of the suit, and after a second publication of the alleged libel by the defendants.

ID.—LIBELOUS MATTER—SPECIAL DAMAGE.—The publication of a false statement that the plaintiff was discharged from his employment for reprehensible conduct, is libelous *per se*, as tending naturally to expose him to obloquy, and to injure him in his occupation, and no averment or proof of special damage is required in such case, such proof being only required when the libelous meaning of the publication is covert, and not apparent on the face of the language used.

ID.—CONSTRUCTION OF LANGUAGE USED—PROVINCE OF JUDGE AND JURY.— When the language of an alleged libel is unambiguous, it is the province of the judge to determine its construction, and where it is capable of two constructions, the jury are to determine in what sense it is used.

ID.—HARMLESS ERROR IN INSTRUCTION.—An instruction submitting to the
jury the determination of the meaning of publications which are libelous
*per se,* is harmless error, where the verdict is for the plaintiff, and
when the court instructed the jury that the publications alleged to be
libelous were to be taken in the sense that is most natural and obvious,
and in that sense in which those persons to whom the publications
should come would be most likely to understand them.   In such case
the instruction was as favorable for the defendants as if the judge had
himself construed the language.

ID.—REFUSAL OF INSTRUCTIONS ELSEWHERE GIVEN.—It is not prejudicial
injury for the court to refuse instructions requested by the defendants
which were, so far as correct, fairly included in the instructions given
by the court.

APPEAL from a judgment of the Superior Court of the
City and County of San Francisco and from an order
denying a new trial.   JOHN HUNT, Judge.

The facts are stated in the opinion of the court.

*William J. McGee,* for Appellant.

The publication is not libelous *per se,* and no special
damages having been proven by plaintiff, he cannot re-
cover.   (*Brooker* v. *Coffin,* 5 John. 190; 4 Am. Dec. 337;
*Davis* v. *Sladden,* 17 Or. 259; Cooley on Torts, 146;
*Downing* v. *Wilson,* 36 Ala. 717; *Funk* v. *Beverly,* 112
Ind. 190; *Shelby* v. *Sun etc. Pub. Assn.,* 109 N. Y. 611;
*Brace* v. *Brink,* 33 Mich. 91; *Pollock* v. *Hastings,* 88 Ind.
248; *Adams* v. *Stone,* 131 Mass. 433; *Moore* v. *Butler,* 48
N. H. 161; *Beach* v. *Ranney,* 2 Hill, 309; *Alfele* v. *Wright,*
17 Ohio St. 238; 43 Am. Dec. 615; *Kelly* v. *Huffington,*
3 Cranch C. C. 81; *Herrick* v. *Lapham,* 10 Johns. 281;
*Barnes* v. *Trundy,* 31 Me. 321; *Woodbury* v. *Thompson,*
3 N. H. 194.)   It was prejudicial error to sustain the
objection to the question asked Cesare Crespi as to
whether or not the alleged libelous article was true.
The falsehood of all defamatory words is presumed in
plaintiff's favor, and he need give no evidence to show
that they are false, but defendant can rebut the presump-
tion by evidence that the words are true.   (*Common-
wealth* v. *Snelling,* 15 Pick. 341; *Bisbey* v. *Shaw,* 12 N. Y.
72; *Stow* v. *Converse,* 4 Conn. 33; *Van Wyck* v. *Guthrie,*
4 Duer, 274; *True* v. *Plumley,* 36 Me. 466; *Lothrop* v.

*Adams*, 133 Mass. 471; 43 Am. Rep. 528; *Clark* v. *Brown*, 116 Mass. 504; *Stilwell* v. *Barter*, 19 Wend. 487; Code Civ. Proc., sec. 2048.) It was, also, error to disallow the question asked Crespi: "Mr. Cevasco sued you on a note some time ago and attached your interest in this paper, *La Voce del Populo*, did he not?" The credibility of a witness may be tested on cross-examination by any mode which is calculated to illustrate the attitude and relation of the witness to the parties. (*Harper* v. *Lamping*, 33 Cal. 647; *People* v. *Dennis*, 39 Cal. 625; *Neal* v. *Neal*, 58 Cal. 287; *Sharp* v. *Hoffman*, 79 Cal. 404; *People* v. *Thomson*, 92 Cal. 506; Greenleaf on Evidence, sec. 446.) It was error to refuse to give defendant's proposed instructions. When the language is ambiguous and capable of different meaning, the determination of the meaning as used by defendant must go to the jury. (*Dexter* v. *Taber*, 12 Johns. 239; *Goodrich* v. *Woolcott*, 3 Cow. 240; *Thompson* v. *Powning*, 15 Nev. 195; *McLaughlin* v. *Bascom*, 38 Iowa, 660; *Bennett* v. *Matthews*, 64 Barb. 410; 13 Am. & Eng. Ency. of Law, 379; *McCue* v. *Ferguson*, 73 Pa. St. 333.)

*Gordon & Young*, for Respondent.

The publication was libelous *per se.* (Civ. Code, sec. 45; *Wilson* v. *Fitch*, 41 Cal. 363; *Maynard* v. *Fireman's Fund Ins. Co.*, 47 Cal. 207; *Fitch* v. *De Young*, 66 Cal. 339; *Lick* v. *Owen*, 47 Cal. 252; *Bettner* v. *Holt*, 70 Cal. 270; *Edwards* v. *San Jose Printing Soc.*, 99 Cal. 431; 37 Am. St. Rep. 70; *Hake* v. *Brames*, 95 Ind. 161; *Boynton* v. *Shaw etc. Co.*, 146 Mass. 219; 13 Am. & Eng. Ency. of Law, 314, 315, and cases cited under note 1; *Lewis* v. *Chapman*, 19 Barb. 252; *Noeninger* v. *Vogt*, 88 Mo. 589; *Mowry* v. *Raabe*, 89 Cal. 606 (609); *Clugston* v. *Garretson*, 103 Cal. 446.)

McFARLAND, J.—This is an action to recover damages for an alleged libel by the defendants in a newspaper owned by them, to the injury of plaintiff. The jury rendered a verdict for plaintiff in the sum of one thou-

sand dollars, which, on the motion for a new trial, was reduced by the court to five hundred dollars.  Defendants appeal from the judgment and from the order denying a new trial.

Appellants' first contention is that the verdict is not sustained by the evidence; but this contention cannot be maintained.  The main issues of fact were whether or not the respondent was discharged as an employee by the firm of Cevasco & Co; and whether the alleged libelous matter was true.  While the evidence upon these two issues was conflicting, there certainly was sufficient evidence to warrant the jury in finding in favor of the respondent upon both said issues.

Appellants contend that the judgment should be reversed on account of errors committed by the trial court with respect to the admissibility of evidence; but we think that this position taken by appellants is not tenable.  When the defendant Crespi was on the stand as a witness for respondent, he was asked by the appellants whether or not the alleged libelous article was true; and an objection by respondent that this question was not in cross-examination was sustained; and this ruling is claimed to have been erroneous.  But nothing was asked witness on the examination in chief about the truth of the article, and we do not think the court erred in holding the question not proper on cross-examination; afterward the said witness was examined on the part of the appellants, when the whole matter of the truth of the article might have been properly gone into by the appellants, and was to a considerable extent.  Upon cross-examination of the same witness by appellants he was asked whether or not the appellant Cevasco had not sued him on a certain note, and attached his interest in the paper, and an objection to this question by respondent was sustained.  Whether or not this ruling was technically correct, it is evident that no harm could have been done to appellants by the ruling.  The only purpose of the question was to show an unfriendly feeling on the part of the witness to the appellant Cevasco;

but the witness had already testified that he was un-
friendly with said Cevasco. When the respondent,
Tonini, was being examined on his own behalf in rebut-
tal, and at the very close of the evidence, he was asked
on cross-examination if, after the second publication
made by the appellants and set forth in the complaint,
he had not also had an advertisement in a certain paper
called the *L'Elvezia,* and the respondent objected to the
question as not rebuttal, irrelevant, incompetent, and im-
material, and that the advertisement spoken of was after
the commencement of the suit. The court sustained
the objection, and appellants contend that this ruling
is reversible error. We do not think that the ruling
was erroneous; we do not see how the matter proposed
to be proven was competent, or that the court abused
its discretion in not allowing it at that stage of the trial.

The foregoing are the only objections to rulings of the
court as to the admissibility of evidence which are pre-
sented in the brief.

Appellants contend that the language alleged in the
complaint to have been published is not libelous *per se;*
and that, as no special damages were proved, respondent
should not have recovered.

At common law there was great difficulty in determin-
ing, in actions of either slander or libel, when language
was actionable *per se*—that is, language from which the
law would presume damage—and when it was actionable
only upon averment and proof of special damage. It is
quite evident that such an action can rarely be successful
where the plaintiff is compelled to plead and specifically
point out and prove the time, place, mode, and cir-
cumstance of his damage. Under the earlier decisions
in actions of slander words were held not to be action-
able *per se* unless they imputed a crime involving moral
turpitude; although, even in actions of slander, the rule
was afterward greatly relaxed. But there was always a
distinction running through the cases between actions
of slander and actions of libel—between words spoken
and words written or printed; and in actions of libel

language was held actionable *per se* which would not have been so held in actions of slander. Some few judges thought this distinction not sound, but they admitted that it was well established by the authorities. (See notes to Townshend on Slander and Libel, sec. 18, p. 71.) Townshend says (Townshend on Slander and Libel, section 18): "To language in writing is attributed, in most cases, a greater capacity for injury than is attributable to language spoken or speech, so that language which, if spoken, gives no right to redress, may, if reduced to writing, give a cause of action." In Broom & Hadley's Commentaries, 760, it is said: "There is, however, this great distinction between the two actions, that from a libel, damage is always implied by law, whereas only some kinds of slander are actionable without proof of special damage;" and in 1 Chitty's General Practice, 45, it is said that the distinctions between slanders and libels "proceed upon the principle that the former are often spoken in heat upon sudden provocations, and are fleeting and soon forgotten, and, therefore, less likely to be permanently injurious; but that written slander is more deliberate and more malicious, more capable of circulation in distant places, and consequently, more likely to be permanently injurious." For the same reasons, no doubt, libel is, in most countries, a public offense, and its perpetrator may be punished criminally; while the author of spoken slander is liable only to damages in a civil action.

However, in most of the states, there is a statutory definition of libel; and, in such case, language which is fairly included in such definition is libelous *per se*. It is only when the libelous meaning of the publication is *covert*—not apparent on the face of the language used— that averment and proof of special damage is required. Our code defines libel as follows: "Libel is a false and unprivileged publication by writing, pictures, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a

tendency to injure him in his occupation." (Civ. Code, 45.) This definition is very broad, and includes almost any language which upon its face has a natural tendency to injure a man's reputation either generally or with respect to his occupation.

In the case at bar it is alleged in the complaint that the parties are all Italians by race, and members of what is known as the Italian colony of the city of San Francisco; that for many years plaintiff had been engaged in San Francisco in the business of railway and steamship agency, selling railway and steamship tickets, and doing all business incidental thereto; that such business was done principally with Italians; that such business required mutual confidence, and that great reliance was placed in plaintiff's honesty, honor, and trustworthiness; and that defendants are also engaged in the same business, and are business rivals of plaintiff, having their place of business at No. 632 Montgomery street in said city. It is further averred that defendants are also the proprietors and publishers of a certain newspaper of general circulation called *La Voce del Populo*, which circulates among and is read by a large number of the Italian residents of said city, and is declared by defendants to be the organ of the Italian population in California; and that on November 16, 1893, and on several other occasions, the defendants published in the Italian language in said newspaper concerning plaintiff certain words, which, being translated into English, are as follows: "The agency of G. B. Cevasco & Co. must state besides, as a matter of truth, that since the 1st of November they were compelled to discharge Mr. M. G. Tonini for his conduct not irreprehensible." It was further averred that afterward, on December 6, 1893, the defendants made the further publication of language, which, being translated into English, is as follows: "We have received from the agency of G. B. Cevasco & Co. the following: 'Mr. M. G. Tonini gives notice in a circular that *he is no more* at 632 Montgomery street, but that he has moved to another place his business.' As a

matter of truth, and to guard the public against any sur-
prise, we must confirm the statement already publicly
made, that is, that Mr. Tonini has not *moved away,* but
has been *discharged* by the firm of G. B. Cevasco & Co.
for conduct not irreprehensible." The complaint also
contains the usual averments as to defendant's intent in
publishing said language; how it was understood by
those who read it, etc.

We think that the language charged, upon its face,
tended naturally, necessarily, and proximately, to pro-
duce some, at least, of the results mentioned in section
45 of the code above quoted; that its natural effect was
to expose plaintiff to "obloquy"—among the definitions
of which given by Webster are "blame, *reprehension*"—
and to "injure him in his occupation"; and that, there-
fore, no averment or proof of special damage was nec-
essary. "To expose one to obloquy is to expose him to
censure and reproach, as the latter terms are synony-
mous with the word obloquy." (*Bettner* v. *Holt,* 70 Cal.
275.) Surely no intelligent man could read these pub-
lications without understanding them to mean that
plaintiff was not an honorable person, and had been
guilty of such reprehensible misconduct as should deter
people from trusting him in his occupation. It cannot
be justly said that the language does not import any-
thing of a defamatory character concerning the plain-
tiff. (See *Bettner* v. *Holt,* 70 Cal. 270; *Lick* v. *Owen,* 47
Cal. 252; *Edwards* v. *San Jose etc. Soc.,* 99 Cal. 431; 37
Am. St. Rep. 70; *Fitch* v. *De Young,* 66 Cal. 339.)

We do not see that in the matter of instructing the
jury any error was committed prejudicial to appellants.
It is no doubt the law that where the language of an al-
leged libel is unambiguous, it is the province of the
judge to determine its construction; and that where it
is capable of two constructions, the jury are to deter-
mine in what sense it was used. (*Van Vactor* v. *Walk-
up,* 46 Cal. 124; Townshend on Slander and Libel, secs.
281, 286.) In the case at bar, while the judge did not
expressly state upon which of these two theories he pro-

ceeded, still he actually left to the jury the determination of the meaning of the publications. In that state of the case, if the verdict had been for defendants, the plaintiff might have plausibly made the point that he had been injured because the judge had not himself construed the language as defamatory. The verdict, however, was for plaintiff; and defendants were not prejudiced unless upon the proposition that the language was not defamatory, and that the jury should not, and could not rightly, have found it to be of that character—a proposition which cannot be maintained. The judge gave a large number of instructions requested by defendants, which stated their side of the case fully and fairly; and we do not think that any prejudicial injury arose out of the refusal to give a few other instructions which they asked. These latter—so far as they were correct—were fairly included in the instructions given. The jury were told, among other things, that " The publications alleged to be libelous are to be taken in the sense that is most natural and obvious, and in that sense in which those persons to whom the publications should come would be most likely to understand them "; and this was certainly putting the case as favorably for defendants as it could rightfully have been put if the judge had himself construed the language. Upon the whole, we see no good reason for reversing the judgment.

The judgment and order appealed from are affirmed.

HENSHAW, J., and TEMPLE, J., concurred.

Hearing in Bank denied.