[L. A. No. 2088.    Department One.—July 28, 1908.]

## MABEL CLARE ERVIN, Respondent, v. RECORD PUBLISHING COMPANY, Appellant.

LIBEL—PLEADING INNUENDO — EQUIVOCAL PUBLICATION. — In an action for libel, for the publication of an article in a newspaper which was upon its face equivocal and capable of a meaning injurious to the plaintiff, it is proper for the plaintiff, by way of innuendo, to allege in the complaint the injurious meaning which it was intended by the defendant, and was understood by the readers of the newspaper to convey.

ID.—PUBLICATION WHEN LIBELOUS—INTERPRETATION BY STRANGERS.—It is sufficient to make a publication libelous if it is of such a character that persons unacquainted with the plaintiff and hearing of her for the first time through said article, reasonably would and do understand therefrom that she is a person of low character and guilty of improper and immoral conduct, the charge, so understood, being false and malicious. The fact that other persons who had a previous acquaintance with the plaintiff would not so construe the article is immaterial.

ID.—WHOLE PUBLICATION TO BE CONSIDERED.—A complaint for libel is sufficient if it appears from the article published and from the innuendo assigning its meaning that the article, as a whole, was false and scandalous.

APPEAL from a judgment of the Superior Court of Los Angeles County. Frederick W. Houser, Judge.

The facts are stated in the opinion of the court.

Edwin A. Meserve, and Paul H. McPherrin, for Appellant.

Jones & Drake, for Respondent.

SHAW, J.—The plaintiff recovered judgment for damages against defendant in an action for libel. The defendant appeals from the judgment upon the judgment-roll.

The defendant is a publisher of a newspaper in the city of Los Angeles. As a part of its daily issue it published what was known as the "pink sheet" or "sporting edition," in which was contained sporting news, with pictures of prize-fighters, wrestlers, and other persons of that class, and other news relating to sporting events. The charge made in the complaint is that it maliciously published in a "sporting edition" or "pink sheet" of its newspaper, of and concerning the plaintiff, the following article:—

"Too Early for the Queen.

Ah Wing Wired 'Queen Mab' to Meet Him But

Hour Was Too Early."

"Mab Ervin, 'Queen Mab,' has a great admirer in one, Ah Wing, champion Chinese pugilist of the world. Ah Wing arrived in Los Angeles Monday morning from his home in Sacramento, to put the finishing touches to his condition for his battle Friday night with Eddie Menny at the pavilion of the Pacific Athletic Club.

"Before he left home, he wired 'Queen Mab,' asking her to meet him at the depot at 7 A. M., but the hour was too early for her majesty and Ah Wing came into town with nobody to welcome him. He was dressed in his bulliest and brassiest Chinese costume, consisting of a pair of pale blue flowered trousers, a dark blue broadcloth jacket and a black pot shaped chapeau surmounting by a cute little rosette of red silk.

"The first time he was here he had on his second best suit. The queen interviewed him and made the biggest hit of her life. This time Ah Wing wore his best clothes because—well, because he wanted to look well in the eye of her majesty, and he never dreamed that she wouldn't be at the depot to meet him. He forgot that one of the prerogatives of royalty is to do as you please, and Ah Wing was sad as he came into The Record office to find Queen Mab.

"There are some things which are better left unsaid, so it is best to pass over the meeting between the queen and her humble subject. Some things are too sacred for mere words."

It is further alleged that by the use and the publication of said words, the defendant intended to assert and be understood as asserting, and by the readers of the said newspaper was, in fact, understood as asserting, that plaintiff was a person of low character, a sweetheart, and boon companion and the consort of the said Chinaman prize-fighter, that she associated with him, was in the habit of meeting him socially and intimately, and would have met him at the train, except that it was too early, that they did thereafter meet in defendant's office, and that because of their said intimacy, there were some things that happened between them that could not be told, and that their relations were such that there were some things too sacred for mere words. It is further alleged that the charge, as thus understood, was false and scandalous, and imputed to the plaintiff a low and base character, without shame or self-respect.

The only error urged upon this appeal is that the court erred in overruling a demurrer to the complaint, assigning as a ground that the complaint did not state facts sufficient to constitute a cause of action. The objection is not well taken. It is not necessary here to decide whether or not the article is libelous *per se*, but the best that can be said of it is, that it is upon its face equivocal and capable of a meaning injurious to the plaintiff of the character stated in the innuendo. It might readily be understood by any one reading it as implying that the plaintiff was a member of the underworld, familiar with the Chinese prize-fighter, and upon such terms of intimacy with him, that when they met things took place between them that were not proper for publication, implying that they were of an indecent or improper character. Being capable of this meaning, it was proper for the plaintiff in her complaint to allege, by way of innuendo, the meaning which it was intended by the defendant and was understood by its readers, to convey, as set forth above. So understood, there can be no question that the article was libelous. "The rule which governs the action for libel in such cases is perfectly well settled. Words, which on their face appear to be entirely harmless, may, under certain circumstances, convey a covert meaning, wholly different from the ordinary and natural interpretation put upon them. To render such words actionable, it is necessary for the pleader to aver that the author of the libel intended them to be

understood, and that they were in fact understood by those who read them, in their covert sense." (*Maynard* v. *Fireman's Fund Co.*, 47 Cal. 208; *Edwards* v. *San Jose etc. Publishing Soc.*, 99 Cal. 435, [37 Am. St. Rep. 70, 34 Pac. 128]; *Ingraham* v. *Lyon*, 105 Cal. 257, [38 Pac. 892].) "If the words are equivocal, or ambiguous, and admit of several meanings, it is proper to attribute to them in the innuendo, the fixed and definite meaning the plaintiff thinks they ought to bear." (25 Cyc., 451.)

In addition to the facts heretofore stated, the complaint alleges that the plaintiff was an unmarried woman of marriageable age and known as "Mab Ervin"; that at the time of the publication of the alleged libel, she was engaged in the business of writing for newspapers, and was in the employ of the defendant on its staff of reporters. It is claimed by the defendant that persons acquainted with plaintiff and having knowledge of these facts, could not understand the article published in any other than an innocent sense. This, however, would not remove its libelous character. It is sufficient to make a publication libelous if it is of such a character that persons unacquainted with the plaintiff, and hearing of her for the first time through said article, reasonably would and do understand therefrom that she is a person of low character and guilty of improper and immoral conduct, the charge, so understood, being false and malicious.

Another ground of demurrer was that the complaint was uncertain, in that it could not be ascertained what portion of the article it was which plaintiff claimed was false and scandalous. There is no merit in this assignment of insufficiency. It is sufficient, if it appears from the article and from the innuendo assigning its meaning, that the article, as a whole, was false and scandalous.

The judgment is affirmed.

Angellotti, J., and Sloss, J., concurred.