[S. F. No. 11839. In Bank.—January 30, 1928.]

JOHN B. MAHER, Respondent, v. E. J. DEVLIN et al., Appellants.

Devlin & Devlin and J. L. Johnson for Appellants.

Wyckoff & Gardner for Respondent.

CURTIS, J.—Action for libel based upon the publication by the defendants in the "Santa Cruz Evening News," a newspaper of general circulation, published in the city of Santa Cruz, of the following article: "A peremptory writ of mandate to compel the mayor and city council of Santa Cruz to call an election within sixty days, to enable the citizens of the city to vote on the proposed recall of these officials, 'for mismanagement and misappropriation of public funds,' was issued here today by the District Court of Appeal." The complaint further set forth that the plaintiff was at the date of the publication of said article, and at the commencement of said action, the duly elected, qualified, and acting mayor of the city of Santa Cruz; that the defendants meant by said publication and were understood by those who read said publication to mean that the plaintiff had been guilty of want of integrity in his conduct of said office, and of the felonious embezzlement of the public funds of said city; that said publication was false and defamatory, and that by reason of said false and defamatory publication the plaintiff had been damaged in the sum of ten thousand

dollars. It was not alleged in said complaint that the article was maliciously published, and no demand was made for punitive or exemplary damages. The answer admitted the publication and alleged that the article set forth in the complaint was a part only of a more extended article published in said newspaper, the entire article as set forth in the answer being as follows:

## "COURT ORDERS RECALL ELECTION.

### "Appellate Justices Make Former Writ Peremptory in Effect.

"San Francisco, Sept. 4.—(AP)—A peremptory writ of mandate to compel the mayor and city council of Santa Cruz to call an election within sixty days, to enable the citizens of the city to vote on the proposed recall of these officials, 'for mismanagement and misappropriation of public funds,' was issued here today by the District Court of Appeal. The writ was issued on the petition of O. H. Beeler, a resident of the city, acting for a number of other petitioners.

"City Attorney E. R. Vaughn of Santa Cruz announced that he will take an appeal to the state Supreme Court if instructed to do so by the defendant city officials.

"According to the allegations made by the petitioners Mayor John B. Maher and the councilmen, George C. Pratchner, Fred C. Royse, Chas. W. Balzari and George R. Gray, committed repeated acts as administrators of the city's welfare indicating their unfitness for public position, one in particular being the purchase of an automobile not needed by the municipality.

"The case was first entered in the state Supreme Court, where it was sent to the appellate court. Today's mandate followed the failure of the accused officials to file an amended complaint when instructed to do so by the court.

"Today's proceeding in the District Court of Appeal at San Francisco marks the culmination of the efforts of the city administration to balk those citizens who had invoked the city charter in a movement to have the voters pass on the acts of the administration.

"It will be recalled that many more than the full number of names required by the charter were secured to petitions asking that an election be called for the retirement of mayor and council. These petitions were scrutinized carefully as to each name by City Clerk Evans, who then referred them to the council with the statement that they met with the legal requirements and that it was up to the council to take the action they prayed for.

"Instead, to the surprise of everyone apparently save the mayor and council, City Attorney Vaughn brought legal objections to the petitions, asserting that many of the signatures were those of persons who had not read the preamble and did not know what they were signing. Thereupon the mayor and council declined to call the election. This left it up to the interested citizens to apply to the courts for a writ of mandate to compel mayor and council to act. Application was made both to the Supreme Court and the District Court of Appeal. The Supreme Court left the matter to the disposal of the Court of Appeal, which proceeded to issue an alternative writ of mandate. The mayor and city council employed a high-priced lawyer in San Francisco to aid the city attorney in further fighting the recall movement. These lawyers then alleged fraud in the circulation and filing of the petitions. It was expected that when the matter came up today they would produce witnesses to sustain their allegations, but there does not appear to have been a single witness to substantiate the fraud allegations.

"The court has disposed of the matter by making the writ of mandate peremptory, which means that the mayor and city council have been ordered to call an election for their own recall."

The answer further denied that defendants meant by the words set out in the complaint, or that said words were understood by those who read said publication to mean, that plaintiff had been guilty of want of integrity in his said office or that plaintiff was guilty of felonious embezzlement of the public funds of said city. For a second defense the defendants alleged that the article published by them was a true report of the proceedings before the district court of appeal and therefore justified, and for third and fourth separate defenses the defendants alleged that the publication was privileged under the provisions of subdivisions 3

and 4 of section 47 of the Civil Code of California. Upon the trial before a jury a verdict for three thousand dollars was rendered against defendants, and from a judgment based thereon said defendants have appealed.

It is first contended by appellants that the judgment should be reversed for the reason that the complaint fails to state any cause of action against defendants, or either of them. Libel, as defined by section 45 of the Civil Code, is a "false and unprivileged publication by writing, printing, picture, effigy, or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation." ■ Any false publication, therefore, which is unprivileged and which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or avoided, or which has a tendency to injure him in his occupation, is libelous. ■ It is alleged in the complaint that the publication complained of was false. There are no facts set forth in the complaint indicating that the publication was made under circumstances which would render it privileged. Therefore, the defense that the publication was privileged must be specially pleaded by the defendants as an affirmative defense (*Swan* v. *Thompson*, 124 Cal. 193 [56 Pac. 878]; *Stevens* v. *Snow*, 191 Cal. 58, 64 [214 Pac. 968]). In determining therefore, the sufficiency of the complaint the only question left for consideration is whether the publication of the article by the appellants exposed the plaintiff to hatred, contempt, ridicule, or obloquy, or caused him to be shunned or avoided, or tended to injure him in his occupation. If it had either or any of these effects then it was libelous *per se* (*Schomberg* v. *Walker*, 132 Cal. 224, 227 [64 Pac. 290]; *Stevens* v. *Snow*, 191 Cal. 58, 62 [214 Pac. 968]). In the first of these two cases, after quoting the definition of civil libel as found in section 45 of the Civil Code, this court said: "This definition is very broad, and includes almost any language which, upon its face, has a natural tendency to injure a man's reputation, either generally or with respect to his occupation." ■ The article published by the appellants, and set out in the complaint, contains the statement that the proposed recall of the plaintiff and other officials of the city of Santa Cruz was for mismanagement

and misappropriation of public funds. This in effect charges that the recall of the plaintiff was sought on the ground that he, as mayor, had misappropriated the public funds of said municipality. In our opinion the natural tendency of such a publication would be to expose the plaintiff to the contempt and obloquy of the citizens of said community who might read said publication. Quoting again from the case of *Stevens* v. *Snow, supra,* page 64, we find the following statement: ''Considering the publication herein . . . it in effect charges the plaintiff with procuring by crooked means an unjust change in the boundaries of a school district and with being actuated by bad faith in so doing. So regarded, it cannot be doubted that the natural tendency thereof would be to expose the plaintiff to obloquy, which is the equivalent of censure, reproach, blame, or reprehension.'' To charge a public official with the misappropriation of public funds coming into his custody, or over which he may have control, is a direct attack upon his honesty, integrity and fitness for public service. That such a charge would bring the official into disrepute among his fellow-citizens, in our opinion, admits of no argument. So serious is this offense—misappropriation of public funds—that the constitution of the state has provided that ''no person convicted of the embezzlement or misappropriation of public money, . . .'' shall ever exercise the privilege of an elector in this state (art. II, sec. 1, Constitution of California). Similar stringent penalties for the offense are imposed by the provisions of the penal laws of this state, making the offense a felony punishable by imprisonment in the state prison and forever debarring the accused from holding public office in this state (Pen. Code, sec. 424). As thus used, misappropriation is synonymous with embezzlement, and it has been so held at least twice by this court (*Fox* v. *Hale & Norcross S. M. Co.,* 108 Cal. 369, 426 [41 Pac. 308] ; *Winchester* v. *Howard,* 136 Cal. 432, 444 [89 Am. St. Rep. 153, 64 Pac. 692, 69 Pac. 77]).

We do not mean to hold that it is necessary in order for a publication to be libelous that it should charge the accused with the commission of crime. Such is not the law, and it was so held in *Stevens* v. *Snow, supra,* page 62, where Mr. Justice Myers, speaking for the court, said: ''Appellants complain that the trial court erred in instructing the

jury that the publication was libelous *per se*, and they invoke the rule that 'it is never libelous to accuse a person of having done that which he may legally and properly do.' The validity of this rule may be conceded, but in its application, the words 'and properly' must not be ignored. It is not sufficient answer to a charge of libel to show that the publication only accuses the plaintiff of having done that which he may legally do. It has never been the law that a publication, to be libelous, must accuse a person of having committed a crime or otherwise violated some law.'' Neither do we mean to hold that the publication by charging the plaintiff with the misappropriation of public funds necessarily charged him with the crime of embezzlement as defined by the penal statutes of this state. We do intend to hold, however, that the publication of the article complained of tended to expose the plaintiff to contempt and obloquy, and, therefore, made the appellants liable for damages under the provisions of section 45 of the Civil Code.

Appellants contend, however, that the meaning of the word ''misappropriation'' is defined in standard lexicons as simply synonymous with misapplication and denotes merely wrongful or improper appropriation; and when used to designate the conduct of a public official in disbursing public funds does not impute to such public official any want of integrity or dishonest motive, but, on the other hand, it merely charges a misuse of such funds by said official. There are some authorities which are cited by appellants and which might appear to give some support to this contention. These authorities, however, are from other jurisdictions, and in so far as they attempt to apply a meaning to the word ''misappropriation'' when used in connection with the wrongful use of public money they are at variance with the weight of authority in this state. The meaning which some of these authorities ascribe to the word ''misappropriation'' is so different from that generally accepted and applied to it by people generally that we do not feel that they should be followed by this court. We are, therefore, of the opinion that the article published by the appellants regarding the plaintiff was libelous *per se*. It follows, therefore, that the complaint stated a cause of action against said defendants.

■ It is next contended by appellants that the court erred in instructing the jury that the publication was libelous *per se*, and refused to permit the appellants to prove that the words were used and understood in an innocent sense. We have already held that the publication was as a matter of law libelous *per se*. As to the duty of the court in passing upon the libelous character of the publication, we think the rule is correctly stated as follows: "The meaning of the language used in an alleged defamatory publication is, in the first instance, a question for the court. Where the language is unambiguous, it is the province of the court to determine its construction, and to decide whether it is actionable *per se*. If, however, the words are susceptible of two meanings, one harmless and the other defamatory, it is for the jury to say in which sense they were used and understood. But it is for the court to determine whether the language used is capable of the defamatory meaning claimed for it by the plaintiff." (16 Cal. Jur., 121, citing *Lyon* v. *Fairweather*, 63 Cal. App. 194 [218 Pac. 477]; *Tonini* v. *Cevasco*, 114 Cal. 266 [46 Pac. 103]; *Dauphiny* v. *Buhne*, 153 Cal. 757 [126 Am. St. Rep. 136, 96 Pac. 880]; *Mellen* v. *Times-Mirror Co.*, 167 Cal. 587 [Ann. Cas. 1915C, 766, 140 Pac. 277].) In view of these authorities it was proper for the court to instruct the jury as to the defamatory character of the publication complained of. ■ Appellants sought to show at the trial that the objectionable words published were meant and understood in an innocent sense. There was in evidence the recall petition against the respondent herein, the said John B. Maher. This petition was the basis of the "proposed recall" mentioned in said publication. In this petition were set forth the reasons or grounds upon which the recall of respondent was asked. Those reasons as set forth in said petition were as follows:

"1. Elected upon a platform of economy, efficiency and progress, his official acts and methods have demonstrated his unfitness to act as Mayor of our city.

"2. He caused the passage of the Merchants' License Tax; sponsored and is attempting to continue the expensive and inefficient system of city assessments; and changed the plans of the water system, which will result in the city being deprived of an adequate supply of wholesome water, all

without consulting the people and against their protest and wish.

"3. He is retarding the progress of the city by holding up the pavement of streets where property owners are anxious to pave.

"4. He dominates and controls city affairs to the extent that his will is substituted for that combined judgment of five officials intended by the charter.

"5. By his arbitrary management of city affairs and the expenditure of city revenues from taxes and bonds, he has forfeited the confidence of the taxpayers and should not be allowed to remain in office and expend the remaining money voted for city improvements."

Appellants then sought to prove that the words "misappropriation of public funds" were used by them and understood by the public not in the sense that imputed to respondent any want of integrity, but simply to mean that respondent had diverted funds of the city provided for a particular purpose from the purpose for which they were voted to an entirely different purpose or object, and that in that sense said publication was true. While appellants do not admit that the publication complained of does not on its face show that they understood the use of these objectionable words in an innocent sense, yet they did not rely on said publication for its true meaning, but sought to show by other evidence the innocent sense in which said words were used and understood. The evidence offered by them was to the effect that a former council of the city of Santa Cruz had passed a resolution outlining the plan to be followed in the improvement of the water system of said city and the particular purpose for which the funds to be derived from a proposed bond issue for said improvement were to be expended; that this preliminary step formed the basis of a bond election, which resulted in the voting of bonds in the sum of four hundred thousand dollars by the electors of said city; that notwithstanding said resolution and the plan adopted thereby, the respondent and associates diverted and expended a large portion of the proceeds of such bonds in a manner entirely different from that provided for in the resolution, so that insufficient money remained to carry out the plan originally adopted. The trial court refused this offer of proof and held that such matters were inadmissible either

to prove the meaning in which said objectionable words were used or understood or to prove the truth of the publication. In so ruling, we are of the opinion that the trial court was correct. To obtain a proper understanding of this question we must go back to the recall petition filed against respondent, and to the reasons therein set forth for respondent's recall. None of the reasons therein assigned for the recall of respondent mentions or in any manner, directly or indirectly, refers to any misappropriation, misapplication or diversion of public funds of the city. These reasons and these alone formed the basis of and constituted the sole grounds of the recall proceedings against respondent. As nothing was stated in any of them regarding the misuse of public funds, and as the publication charged that the proposed recall of respondent was for the misappropriation of public funds, it is quite obvious that the evidence offered in no way tended to prove the truth of the article published. Had the recall proceedings against the respondent been based upon the claim that he had diverted funds properly belonging to the water system to some other public improvement of the city, then there might have been some semblance of an excuse for designating his act as a misappropriation of such funds, and evidence of such acts might have been admissible to prove the truth of the publication. Such evidence might also have been admissible as tending to prove the meaning in which the words were used in the article published, and that they were intended thereby to refer to respondent's action in directing or misusing the funds of the city rather than to a misappropriation of said funds in the sense these words are generally understood. But as respondent had not been charged in the recall petition with the diversion of any of the public funds the proffered evidence had no bearing whatever upon any question in the case, and it was properly rejected by the trial court. We have referred to the fact that appellants did not rely upon the article as published as proof that words claimed to be libelous were used in an innocent sense. This article is quoted in full in the preceding pages of this opinion. The first part was evidently a telegraphic dispatch sent from San Francisco; the remaining part of said article is apparently the personal comment of appellants upon the proceedings before the district court of appeal, of which the first part

purports to give an account. It will be noticed by reference to this article that neither in the telegraphic dispatch nor in the personal comment thereon by appellants is there any intimation that by the use of the words "misappropriation of public funds" it was intended to refer to the act of the respondent and his associates in diverting the water bond money to purposes other than those for which it was voted. The appellants in their comments following the telegraphic dispatch purport to give a brief account of the proceedings from the filing of the recall petition up to the order of the district court of appeal issuing the peremptory writ of mandate. In this account no attempt was made to explain the words "misappropriation of public funds," nor was there any mention of the purported misuse of the water bond funds, nor any intimation that the "misappropriation of public funds" had reference to the acts of the respondent in the expenditure of money raised by the sale of said water bonds. The article itself is the best evidence of its meaning. It is free from ambiguous terms and technical language of any kind. We are not able to see how a reading of the published article as a whole, or otherwise, would lead to the belief that by the use of the words "misappropriation of public funds" it was intended thereby to refer to the manner in which the officers of said city expended the water bond money.

In the third separate defense of the answer of appellants, as already stated, they claimed the publication was privileged under subdivision 3 of section 47 of the Civil Code. In setting up this defense appellants specially pleaded their publication of the newspaper, the "Santa Cruz Evening News," their interest in the news relative to the respondent, their duty to disseminate such news to the public, also interested therein; that the portion of said article which contained the words "misappropriation of public funds" was received by them through the news service of the Associated Press, of which they were members; that they published the same believing it to be a true and correct account of the occurrences and happenings at the hearing before the district court of appeal, and solely upon their said obligation and without any malice or intent to injure respondent. At the trial the court held this plea, that the publication was privileged, was insufficient and

refused to permit appellants to prove the allegations of this special defense on the ground that it failed to allege honest belief on the part of the appellants that respondent had misappropriated public funds. In support of this ruling respondent relies upon the case of *Snively* v. *Record Publishing Co.*, 185 Cal. 565 [198 Pac. 1]. In that case this court held that the privileged character of a publication as defined by subdivision 3 of section 47 of the Civil Code applied to an article published in a newspaper regarding the official conduct of a public officer. "This is the correct rule, but it does not arise from the fact that the publication is made in a newspaper. It is based on the fact that the official conduct of public officers, especially in a government by the people, is a matter of public concern of which every citizen may speak in good faith and without malice. The privilege of the newspaper is in nowise different from that of any citizen of the community." (*Snively* v. *Record Publishing Co.*, supra, p. 571.) It was further held in that case that in order for a publication to come within the protection of subdivision 3 of this section it was not necessary that it be true. Prior to the rendition of that decision it was the established law of this state that the plea of privilege under this subdivision of the section in the publication of an article claimed to be libelous would not avail against a false charge. In other words, a false article was not a privileged communication (*Dauphiny* v. *Buhne*, 153 Cal. 759 [126 Am. St. Rep. 136, 96 Pac. 880]; *Jarman* v. *Rea*, 137 Cal. 350 [70 Pac. 216]). But in the case of *Snively* v. *Record Publishing Co.*, supra, page 576, the court held: "We are satisfied that Dauphiny v. Buhne and Jarman v. Rea went too far in declaring that a privileged communication must be true in order to make it privileged, and that they should be overruled so far as they so declare."

Continuing, this court said, on the same page of the opinion in that case (page 576) : "With regard to this form of qualified privilege, no logical distinction can be made between a false charge of crime and a false charge of any other fact of a defamatory character. The occasion and the relations between the one making the charge and those to whom it is made being such that the communication would be privileged, the right of the publisher to speak or write is complete and unqualified, under the code, except that he must

speak or write 'without malice.' When under these conditions he honestly believes that the person of whom he speaks or writes is guilty of a crime of a nature that makes the fact material to the interests of those whom he addresses, it is as much his right and duty to declare to them that fact as it would be to tell them any other fact pertinent to the occasion and material to their interests. If the publisher of a newspaper honestly believes that a public officer has committed crime of a nature which would indicate that he is unfit for the office he holds, we think he is not liable for damages under the code in a civil action for libel when, without malice, and so believing, he publishes a statement to that effect to the community served by the officer.''

It is this language which the respondent evidently relies upon to sustain the ruling of the trial court, in which it held that appellants' plea of privilege under subdivision 3 of section 47 of the Civil Code was insufficient and refused to admit any evidence in support thereof. The question thus presented is a matter of pleading. No such question was before the court in the case of *Snively* v. *Record Publishing Co., supra*. The language last quoted was not used in passing upon the merits of any pleading in that case, but was employed in discussing the extent to which the publisher of a newspaper might go in commenting upon the acts of a public officer and still keep within the protection of subdivision 3 of said section of the Civil Code. The court held that, according to the code section, the article must have been published without malice in order to be privileged, but that to show an absence of malice the publisher was not required to prove that the article was true, but only that he honestly believed it to be true, or in the case then before the court where the publication had accused the officer of a criminal offense, which was false, it was necessary for the publisher, in order to prove an absence of malice and, therefore, that the publication was privileged, to prove that he honestly believed that the officer had committed the offense charged. The court then went on to show in the Snively case that the kind of malice contemplated by the provision of the code upon the subject of libel and slander was actual or express malice or distinguished from ''that somewhat fictional form of malice sometimes described as 'a wrongful act done intentionally without just cause or ex-

cuse,' or as 'the absence of legal excuse.' '' It is quite obvious that the court in these discussions had under consideration the subject of malice, and the probative facts necessary to prove its existence, or want of existence. The answer in the Snively case, setting up that the article published was privileged under subdivision 3 of section 47 of the Civil Code, contained no allegation that the defendant in that case believed that the article published was true, or that the defendant believed the officer charged was guilty of the crime charged. It simply alleged the article was published without malice, and in effect was precisely like the answer in the present action. Its sufficiency was neither raised by the parties nor considered by the court, and we are unable to construe any language in that case as holding that in pleading that a publication, false in fact, was privileged under subdivision 3 of section 47 of the Civil Code, it was necessary to allege in addition to the fact that the article was published without malice, that the publisher honestly believed it to be true, or that, where the article charged a public officer with the commission of a crime, the defendant must allege that he honestly believed the officer guilty of the crime charged. All that is necessary in such cases is to charge that the publication was without malice. It was, accordingly, error for the trial court to have refused to permit appellants to introduce evidence in support of their third separate defense.

It was not error for the trial court to deny appellants' application to file an amendment to this separate defense. The proposed amendment offered during the trial referred simply to the action of the former council of said city, already referred to, in passing a resolution designating the manner in which the money derived from the sale of bonds, voted by said city for the purpose of improving its water system, should be spent, and that respondent and his associates on the city council diverted this money to other purposes. As already stated, the acts of the respondent in reference to the expenditure of said bond money was not included in the grounds or reasons assigned for the recall of respondent, and they therefore cannot in any manner be relied upon as justifying the publication of that portion of the article, wherein it is stated that the proposed recall of respondent was for the misappropriation of public

funds. For the same reason the court did not err in denying appellants' offer to prove that respondent had mismanaged the public funds of the city.

 The court instructed the jury "that there is no evidence tending to prove that said publication was a fair or true report of said judicial proceeding." Appellants complain of the giving of this instruction. As we have stated, the recall proceedings against respondent were not based upon any charge of misapplication or misappropriation of public funds, and we do not think that appellants seriously contend to the contrary. They do claim, however, that the recall proceedings against some of the members of the city council were based upon what they assert was an improper diversion of the water bond money from the purpose for which it was voted, and that the report of the proceedings before the district court of appeal did not single out the respondent, but referred to him and his associates, and that the "proposed recall of these officials" was "for mismanagement and misappropriation of public funds." In other words, appellants contend that evidence that some of "these officials" were charged with the misappropriation of public funds justified the publication as true of the article stating that all of said officials had been so charged, even though no such charge had been made against respondent. We are not impressed with this argument. If A and B were in court, A charged with speeding and B with larceny, a report of the proceedings that A and B were before the court charged with larceny could hardly be considered a true report of said proceedings, in so far as the same related to A, and we are inclined to the belief that he would have just and legal cause to object to the publication of such a report, and we hardly believe it could be successfully contended that evidence that the report was true as regards to the charge against B would be any evidence that it was true as to the charge against A. The instruction of the court was therefore justified by the evidence adduced at the trial. The report as published being untrue was not privileged under the provisions of subdivision 4 of section 47 of the Civil Code. To sustain their plea that the publication was privileged under this provision of the code, the appellants offered in evidence the affidavits filed in the recall proceedings against the members of the

city council setting forth the grounds or reasons upon which it was sought to recall these officials. The court sustained an objection to these affidavits. From what we have already said it is apparent that these affidavits were inadmissible in evidence against this respondent, and the ruling of the court thereon was correct. Neither did the court err in the giving of an instruction regarding damages nor in refusing to give a proposed instruction upon the same subject offered by the appellants.

It is finally contended that the verdict was excessive. This was a matter largely within the sound discretion of the jury. We cannot say from the evidence that there was any abuse of discretion on the part of the jury in fixing the amount of damages sustained by respondent.

For the error of the court in refusing to permit appellants to offer evidence in support of their third separate defense the judgment is reversed.

Seawell, J., Waste, C. J., Langdon, J., Richards, J., and Shenk, J., concurred.

Preston, J., deeming himself disqualified, did not participate in the decision.

Rehearing denied.

All the Justices present concurred.