[Civ. No. 6881. First Appellate District, Division One.—February 17, 1930.]

ERNESTO VEDOVI, Appellant, v. WATSON & TAYLOR (a Corporation), Respondent.

James Sykes for Appellant.

Redman & Alexander for Respondent.

GRAY, J., *pro tem.*—Appeal from a judgment given in an action for libel for failure to amend after the demurrer to the amended complaint had been sustained. Since the four causes of action set forth in such complaint are alike in form and substance except only as to the recipient of the respective notices and the amount therein stated as due, it will be sufficient, for the present purposes as suggested by counsel, to consider only the sufficiency of the first cause of action. As to the publication of the alleged libel it alleges "that the defendant . . . published, declared and circulated of and concerning the plaintiff by depositing in the United States mail, with postage thereon, directed and addressed to the Western States Life Insurance Company the following written, libelous and defamatory communication in words and figures, to wit:

"Cancellation Notice for Non-Payment of Premium.

"San Francisco, Dec. 12th, 1927.

"To Western States Life Insurance Co.

"995–Market St.,

"San Francisco.

"Payment has not been made at this office of the premium of $54.35 under Policy No. 141094 issued to Western States Life Insurance Co., loss, if any, payable to Ditto,

written to cover $400.00 on 1925 Ford Coupe at San Francisco, from July 31st, 1926.

"And you are hereby notified that unless said premium be paid on or before . . . days from the date of service of this notice, said policy, and the whole thereof, including the Mortgage Agreement, if any, will stand cancelled for non-payment of premium without further notice, and thereafter be null and void, and no liability will exist thereunder.

"In the event of cancellation as above, demand is hereby made on you for *pro rata* earned premium of $54.35 which must be paid at the San Francisco office of this Company without delay, and demand is also made on you for the return of said Policy to the undersigned.

"PROVIDENT FIRE INSURANCE CO.

"By WATSON & TAYLOR, General Agents."

Defendant urges that its demurrer was properly sustained because the notice is not libelous as (1) it does not refer to plaintiff either directly or by reference and (2) it does not constitute any charge against him.

As to the first point, it is necessary that the words should have been published concerning the plaintiff and should have been understood by at least one third person to have concerned him. (*De Witt* v. *Wright,* 57 Cal. 576; *Nidever* v. *Hall,* 67 Cal. 79 [7 Pac. 136].) "Defamatory words to be actionable must refer to some ascertained or ascertainable person, and that person must be plaintiff (citing *Rhodes* v. *Naglee,* 66 Cal. 677 [6 Pac. 863]; *De Witt* v. *Wright, supra; Skrocki* v. *Stahl,* 14 Cal. App. 1 [110 Pac. 957]). If the words used really contain no reflection upon any particular individual, no averment can make them defamatory. It is not necessary that plaintiff should be mentioned by name if the words used in describing the person meant, can be shown to have referred to him and to have been so understood (citing *Peterson* v. *Rasmussen,* 47 Cal. App. 694 [191 Pac. 30])." (36 Cyc. 1159.) Plaintiff claims that the apparent deficiency of reference to him in the notice is supplied, in accordance with section 460 of the Code of Civil Procedure, by his allegation that the defendant published "*of and concerning the plaintiff*" the above notice. "By this provision" (referring to said section) "the inducement and colloquium are dispensed with, and if the words charged are libelous in themselves, the plaintiff is

only required to allege that the libelous words were spoken 'of and concerning the plaintiff.' This is an issuable fact, as was the colloquium under the former system, and if denied, must be established at the trial. If the words used are not libelous in themselves, or if they have some occult meaning or local signification, and require proof to determine their meaning or to show that they are libelous, or if they are words in a foreign language, it is necessary to make such allegation of their meaning as will show them to be actionable, and by averment 'to ascertain that to the court which is generally or doubtfully expressed.' (*Van Vechten* v. *Hopkins,* 5 Johns. (N. Y.) 220 [4 Am. Dec. 339].) The statute dispenses with them (that is, the colloquium and innuendo) only so far as they show that the defamatory words applied to the plaintiff, and goes no further. The averments necessary in common-law pleading to show the meaning of the words must still be made. (Bliss on Code Pleading, sec. 305; see, also, *Fry* v. *Bennett,* 5 Sand. (N. Y.) 54; *Petsch* v. *Dispatch P. Co.,* 40 Minn. 291 [41 N. W. 1034]; *McLaughlin* v. *Russell,* 17 Ohio, 479; *Wesley* v. *Bennett,* 5 Abb. Pr. (N. Y.) 498; *Pike* v. *Van Wormer,* 5 How. Pr. (N. Y.) 171; *Cook* v. *Rief,* 20 Jones & S. (N. Y.) 302.)'' (*Harris* v. *Zanone,* 93 Cal. 65 [28 Pac. 845].) If the language of the notice is libelous in itself, this allegation is sufficient (*Rhodes* v. *Naglee, supra; Schomberg* v. *Walker,* 132 Cal. 224 [64 Pac. 290]; *Bohan* v. *Record Pub. Co.,* 1 Cal. App. 429 [82 Pac. 634]; *Skrocki* v. *Stahl, supra; Peterson* v. *Rasmussen, supra*), but, if it is not, the extrinsic facts which make it libelous must be alleged. (*Schomberg* v. *Walker, supra.*)

A consideration of this question as to whether the language is libelous in and of itself necessarily involves a consideration of the second point urged by the defendant, that is—the notice does not constitute any charge against the plaintiff. If the language of the notice is fairly included within the definition of libel, given in section 45 of the Civil Code, it is libelous *per se.* (*Tonini* v. *Cevasco,* 114 Cal. 266 [46 Pac. 103]; *Schomberg* v. *Walker, supra; Stevens* v. *Snow,* 191 Cal. 58 [214 Pac. 968]; *Maher* v. *Devlin,* 203 Cal. 270 [263 Pac. 812].) Since there is nothing in the notice itself, especially in absence of reference to the plaintiff or any charge against him, which ex-

poses him to hatred, contempt, ridicule or obloquy, or which causes him to be shunned or avoided or which has a tendency to injure him in his occupation, it is obvious that the notice is not libelous *per se.* "To constitute a libel, it is not necessary that there be a direct and specific allegation of improper conduct, as in a pleading. The charge may be either expressly stated or implied; and in the latter case the implication may be either apparent from the language used, or of such a character as to require the statement and proof of extrinsic facts (inducement, colloquium and innuendo) to show its meaning. In the last case, proper allegations and proofs of the facts necessary to make the meaning of the language apparent will be required. Otherwise, whether the charge be directly made or merely implied, the publication—without averment, colloquium, or innuendo—will, in itself, constitute a libel." (*Schomberg* v. *Walker, supra,* at p. 227 of 132 Cal.) "Where the words are actionable in themselves there is no occasion for inducement to be alleged, but where the words are not actionable they may be made so by the inducement, and it is then no more necessary to allege special damages than where the words are actionable in themselves. So long as they are made actionable by appropriate pleading, it is immaterial whether this comes about through the words themselves or through the words coupled with the inducement.

"Words not actionable in themselves may be made so by a colloquium and proper averments. (Newell on Slander, pp. 603, 613, citing *Stancell* v. *Pryor,* 25 Ga. 40.) It is the office of the inducement to narrate the extrinsic circumstances which, coupled with the language published, affect its construction and render it actionable, where, standing alone and not thus explained, the language would appear either not to concern the plaintiff, or, if concerning him, not to affect him injuriously. (Townshend on Slander, p. 554, and notes.)" (*Jarman* v. *Rea,* 137 Cal. 339, 345 [70 Pac. 216, 218].) "The rule which governs the action for libel in such cases is perfectly well settled. Words, which on their face appear to be entirely harmless, may, under certain circumstances, convey a covert meaning, wholly different from the ordinary and natural interpretation put upon them. To render such words actionable, it is necessary for the pleader to aver that the author of the libel intended

them to be understood, and that they were in fact understood by those who read them, in their covert sense. (*Maynard* v. *Fireman's Fund Co.*, 47 Cal. 208; *Edwards* v. *San Jose etc. Publishing Soc.*, 99 Cal. 435 [37 Am. St. Rep. 70, 34 Pac. 128]; *Ingraham* v. *Lyon*, 105 Cal. 257 [38 Pac. 892].)'' (*Ervin* v. *Record Publishing Co.*, 154 Cal. 79, 81 [18 L. R. A. (N. S.) 622, 97 Pac. 21, 22].) See, also, *Nidever* v. *Hall, supra.*

By way of inducement, the amended complaint alleges the following extrinsic facts: That the Western States Life Insurance Company was a client of plaintiff with whom he had transacted insurance business as broker, that the policy of insurance, referred to in the notice, was solicited, obtained and secured by him and he brokeraged the policy through the defendant, that is to say, the defendant, as general agent, wrote the policy in the Provident Fire Insurance Company and delivered it to plaintiff, who delivered it to the Western States Life Insurance Company and, at the same time, collected the premium, and prior to the notice he remitted to defendant the premium, less his brokerage. By way of innuendo (i. e., meaning) the complaint further alleges defendant published the notice ''for the purpose of conveying to and advising the Western States Life Insurance Company that this plaintiff was a defaulter and that he had committed the crime of embezzlement and the same did charge and declare that he had in truth and in fact embezzled the said sum of Fifty-four dollars and 35/100 ($54.35), all of which was false and wholly untrue and known to be false and untrue by the defendant herein at the time of the publication of the same; that defendant, by the publication of said libel, intended and did charge that plaintiff had converted said premium to his own use and that he, the said plaintiff, embezzled said money; that defendant, in the publication of said libelous communication, intended that the same should be understood by said Western States Life Insurance Company . . . to charge this plaintiff with the crime of embezzlement and that the said Western States Life Insurance Co., . . . did understand and believed said libelous communication as charging and intending to charge plaintiff with the crime of embezzlement.''

The rule of construction to be applied to the complaint is well stated in *Bettner* v. *Holt,* 70 Cal. 270, 274 [11 Pac. 713, 715], as follows:

"In the interpretation to be placed upon language charging the publication of a libel, a court of justice is to put such construction upon the words which it contains as may be derived 'as well from the expressions used as from the whole scope and apparent object of the writer.' (*Spencer* v. *Southwick,* 10 Johns. (N. Y.) 259; *Cooper* v. *Greely,* 1 Denio (N. Y.), 358.)

"And not only is the language employed to be regarded with reference to the actual words used, but according to the sense and meaning under all the circumstances attending the publication which such language may fairly be presumed to have conveyed to those to whom it was published. So that in such cases the language is uniformly to be regarded with what has been its effect, actual or presumed, and its sense is to be arrived at with the help of the cause and occasion of its publication.

"And in passing upon the sufficiency of such language as stating a cause of action, a court is to place itself in the situation of the hearer or reader, and determine the sense or meaning of the language of a complaint for libelous publication according to its natural and popular construction. (Townshend on Libel and Slander, sec. 133.)"

"It is not required that the facts be set forth with all the technicality or precision of an indictment, if the crime be imputed in the ordinary language usually employed to denote it in lay conversation." (*Jarman* v. *Rea, supra,* at p. 345 of 137 Cal.; see, also, *Schomberg* v. *Walker, supra; Carl* v. *McDougal,* 43 Cal. App. 279 [184 Pac. 885].) "Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted." (Pen. Code, sec. 503.) Applying a liberal construction (*Ingraham* v. *Lyon,* 105 Cal. 254 [38 Pac. 892]), the most that appears from the notice, viewed in the light of the extrinsic facts alleged, is that plaintiff collected the premium from his client and that the Provident Fire Insurance Company or defendant as its agent failed to receive it. There is nothing, either directly or inferentially, to show that plaintiff was entrusted with the premium or fraudulently appropriated it. In short,

no words are used in the notice which, even if construed by aid of the extrinsic facts, remotely charge embezzlement.

But, in the innuendo, the complaint alleges that defendant, by the notice, meant to charge plaintiff with that crime, and was so understood by the Western States Life Insurance Company. As the words in the notice are not actionable *per se,* the innuendo may only interpret their meaning but cannot introduce a meaning broader than the words naturally bear in view of the facts alleged in the inducement. (*Grand* v. *Dreyfus,* 122 Cal. 58 [54 Pac. 389].) Where the words can bear but one meaning and that is obviously not defamatory, no innuendo can make the words defamatory. (*Pollock* v. *Evening Herald Pub. Co.,* 28 Cal. App. 786 [154 Pac. 30]; *Des Granges* v. *Crall,* 27 Cal. App. 313 [149 Pac. 777].) Since the notice, together with the inducement, does not support the innuendo, the following rule is applicable. "It cannot be disputed that it is for the court to determine whether, in the light of such extrinsic facts as are alleged, the writing can be a libel. If, in the light of such extrinsic facts, the article is not fairly susceptible of the defamatory meaning sought to be attributed to it, the complaint fails to state a cause of action. Of course, if the language of the article is capable of two meanings, one of which is harmless and the other libelous, and it is alleged that the same was used and understood as conveying the latter meaning, a cause of action is stated, and it is the province of the jury to determine in which sense the language was used and understood by the readers of the article. But it is for the judge to determine whether the language used is capable of the defamatory meaning claimed for it by the plaintiff. (See *Van Vactor* v. *Walkup,* 46 Cal. 124, 133.)" (*Mellen* v. *Times-Mirror Co.,* 167 Cal. 587, 593 [Ann. Cas. 1915C, 766, 140 Pac. 277, 279]; *Maher* v. *Devlin,* 203 Cal. 270 [263 Pac. 812].)

Since the demurrer was good upon both points, the trial court properly sustained it and therefore the judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 19, 1930, and a peti-

tion by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 17, 1930.

All the Justices present concurred.