**Jules POND, Appellant,**

v.

**GENERAL ELECTRIC COMPANY,**
a Corporation, Appellee.

No. 15520.

United States Court of Appeals
Ninth Circuit.

April 1, 1958.

Russell K. Lambeau, Los Angeles, Cal., for appellant.

Meserve, Mumper & Hughes, E. Avery Crary, Robert A. Stewart, Jr., Los Angeles, Cal., for appellee.

Before FEE and CHAMBERS, Circuit Judges, and CHASE A. CLARK, District Judge.

JAMES ALGER FEE, Circuit Judge.

Jules Pond brought an action against General Electric Company for damages on account of the publication of four supposed libels. The trial court sustained a motion to dismiss the amended complaint and, upon refusal of Pond to plead further, entered judgment dismissing the action. This appeal followed.

The "First Amended Complaint—Damages—Defamation" set up allegations outlined below. Pond is a qualified engineer who had been employed in Argentina, Asia and the United States by International General Electric Company and foreign subsidiaries thereof for some seventeen years. He resigned in 1950. He was given a service letter by the Company, wherein his various assignments and positions with the Company were set out in detail. It is related therein that he resigned because he believed his prospects with the Company were unsatisfactory. The letter, which contained references to his personality and his professional ability in rather glowing terms, concluded with hopes for his success in the future. The complaint then expressly alleges there was an "express understanding" between Pond and the Company that Pond could use this letter "for the purpose of obtaining employment" and that the Company "would provide prospective future employers of plaintiff with the same facts as were recited" in this letter and "would answer any other inquiries that it could answer in accordance with the facts." It is also alleged that all the persons to whom Pond reported during his employment are alive. It is then pleaded that Pond sought employment in 1956 from four different firms, the agents of which purportedly read the letter above referred to. Each of these wrote a letter asking specific questions concerning the honesty,

loyalty, competency, responsibility, ability to get along with people, desirability as a security risk and any other comments as to the ability and character of Pond. The letter in response to each of these inquiries was set out in full as an exhibit to the complaint. It reads:

"This is in reply to your letter of March 12 in which you request information concerning Mr. Jules S. Pond.

"The official in International General Electric to whom Mr. Pond reported passed away several years ago, and I am unable to give you first-hand information concerning him. His personnel record with the Company indicates that he had approximately 17 years of service in the International General Electric family. His initial engagement was with General Electric S.A., Argentina. During the early 40's he came to the United States of his own volition, seeking opportunity for engagement here while in the process of securing naturalization as a U. S. citizen. He was hired by International General Electric after his arrival in the United States, and was assigned to our Air Conditioning and Refrigeration Department. Our records further indicate that he submitted his resignation on August 9, 1950, which was accepted by mutual agreement.

"Insofar as I can determine from his records, we would not be prepared to consider him for re-engagement.

"Very truly yours,
"Charles Mentzer,
"Specialist-Personnel."

It is alleged that the statement that the official to whom Pond reported had died was false. It is alleged that it was untrue that the writer was unable to give first-hand information about him. It is set up that the letter was worded as it was because of personal malice and ill will of certain employees of the Company.

It is claimed by innuendo that the prospective employer was given the impression that the service letter might not be authentic or correct, that the Company files contained much information unfavorable to Pond, and that it could not give a favorable report or recommendation as to him. The pleading indicates that the Company should have repeated the detailed information in the service letter. It was claimed the Company should have answered specifically questions about the ability, loyalty and other characteristics of Pond, and should have included favorable statements which it is alleged were borne out by his record. It is specifically alleged that the Company knew that, before plaintiff became a citizen of this country, his surname had been Podnossof, that he was born in Poland, that he had attended primary and high schools in Soviet Russia, and that he had lived in the U.S.S.R. It is further alleged that the Company knew any prospective employer of plaintiff would know such facts and be sensitive to any comment or attitude of a former employer as to his loyalty and his desirability as a security risk. It is alleged that the Company well knew that plaintiff was not a security risk, that his loyalty was above reproach, and that his honesty and integrity were deserving of a favorable recommendation. It is alleged that the disclaimer of personal knowledge by the writer and the gratuitous suggestion that from his records the Company would not be prepared to consider him for re-engagement would magnify the negative character of the reply, and the omissions would be more pointed and the recipient so understood them.

Affirmatively, it is alleged that the information contained in the reply was of little or no interest to the prospective employers, that his service with the Company had been entirely satisfactory, and that he was an exceptionally competent engineer.

■ Ordinarily, a motion to dismiss should not be granted. Where there is any doubt about the character of the

action, doubts should be resolved in favor of the pleader. If there is a possibility that a good claim has been stated defectively, the precedents indicate the motion should be denied. However, these rules do not apply to the instant complaint.

It is unquestionable that a cause of action in libel is attempted. The pleader was no novice. Technically, the pleading is excellently done. But a cause of action is not stated. None could be stated.

A casual glance at the reply letter shows that it is not and could not be libelous per se. Nor is the letter in question reasonably susceptible to a defamatory meaning in light of the surrounding extrinsic facts pleaded by way of inducement.

A detailed study of the writing proves that there is nothing defamatory contained therein.[1] Where such a plainly worded communication is set out as the basis of complaint, the innuendo can serve no purpose.[2] The device of innuendo and detailed inducement was adopted here to explain the words of a writing as defamatory. But this process cannot cause a letter, plainly worded, to be libelous, by failing to interpret the words themselves and by imputing a defamatory and malicious meaning to the lacunae therein.[3] Silence is not libel. A perfunctory answer to an inquiry is not defamation. A former employee cannot force an employer to give him a favorable recommendation, even if the records show all the facts such as those here alleged. Even if the complaint be taken as true in all respects, the former employer might not have cared to recommend Pond for social reasons. The mere fact that a prospective employer might draw inferences from silence or a perfunctory answer is of no assistance to Pond.

There is a circumstance also of some importance. The original service letter of the Company, which is set out in the complaint, is subject to the same criticisms which Pond directs to the reply. There was no mention of the honesty or integrity of Pond therein. There is no word as to the loyalty of Pond to the United States or as to his desirability as a security risk. There is no explanation of the reason why Pond resigned from International General Electric, except it resulted from the belief of Pond that his prospects with that Company were unsatisfactory.

The omissions of the service letter are patent and manifest. No business man would read it without the sense that many things had been omitted. Pond alleged inferentially that each of the prospective employers had read the original letter. If so, any one of them would undoubtedly have written for an explanation of his resignation after seventeen years of service upon an excuse so palpably inadequate. All the favorable

1. "* * * it is for the court to determine whether, in the light of such extrinsic facts as are alleged the writing can be a libel." Mellen v. Times-Mirror Co., 167 Cal. 587, 593, 140 P. 277, 279. See also Maher v. Devlin, 203 Cal. 270, 278, 263 P. 812.

2. "* * * if the words under no circumstances could convey a defamatory meaning, then no innuendo can make them defamatory." Washer v. Bank of America, 21 Cal.2d 822, 828, 136 P.2d 297, 301, 155 A.L.R. 1338. See also Emde v. San Joaquin County Central Labor Council, 23 Cal.2d 146, 159, 143 P.2d 20, 150 A.L.R. 916; Keenan v. Dean, 134 Cal.App.2d 189, 195, 285 P.2d 300; Lorentz v. R.K.O. Radio Pictures, 9 Cir., 155 F.2d 84, 87.

3. Illustrative is the example given by the California Supreme Court in Bates v. Campbell, 213 Cal. 438, 2 P.2d 383, 385. There the court said that the statement, "It would probably serve no useful purpose to recite the circumstances leading to the request for [plaintiff's] * * * resignation which in pursuance to such request, was received and accepted * * *" could not be construed to mean that the plaintiff was discharged because unfit to occupy the position. The court said "the statement quoted * * * makes no reference whatever, either expressly or impliedly, to appellant's fitness or unfitness to occupy such position, and is not therefore reasonably open to the construction attempted to be placed on it." Bates v. Campbell, supra, 213 Cal. at page 443, 2 P.2d at page 385.

sides of the record of Pond were laid out in detail. But, if his record was that good, it would have been necessary to discover why he left the employment. However, the Company was under no duty to say upon request or otherwise. If there had been some reason, which the Company did not care to disclose, why it permitted Pond to resign or why it probably would not reemploy him, it would not have been ethical in commercial circles for the Company to recommend him.

■■ Further, there is no duty upon a former employer to recommend one upon the basis of honesty and integrity, even if it knows its former employee to possess these admirable characteristics. If, as plaintiff alleges, the Company would know that prospective employers would discover plaintiff had a foreign surname and was born, educated and lived in a foreign country and would be sensitive to the attitude of a former employer, there was certainly no duty placed upon the Company to explain the facts or defend Pond against any implications which might, according to him, be drawn therefrom.

■ The trial court also held that the communications claimed to be defamatory were qualifiedly privileged. Pond has pleaded facts which constitute a defense to his claims.[4] The occasion was qualifiedly privileged. It is shown in each case that a person interested in employing Pond and in his qualifications and record requested the Company, who was interested in the record of Pond, for information relating to his qualifications.[5] Under the statute, malice is not inferred from the communication. California Civil Code, §§ 47, 48. As has been noted above, the fact that the ethics of the business world entered into the situation is of major importance. But malice of the employees of the Company is expressly pleaded. The allegations are probably mere conclusions, but we should not stand upon the technicalities of pleading. Therefore, the qualified privilege was nullified on the face of the pleading.

But the amended complaint did not state a cause of action. Nor could it have been amended so as to state a claim. Pond confessed that he had no further facts to add by allegation when he refused to plead further.

■ A libel is a false and unprivileged publication by writing. California Civil Code, § 45. The amended complaint does not allege that this communication is false in any material particular. This letter is not libelous on its face. The allegation of the extrinsic facts by inducement, by colloquium or by innuendo did not make it so. No further facts of which the court conceives could make this writing false or defamatory. The gist of the claim is that the Company did not speak or write. A former employee cannot compel his former employer to give him a recommendation. The sting of the letter is the statement that the Company would probably not reemploy Pond (after he had had seventeen years of service with it). But that statement is not alleged to be false and must be taken to be true.

Affirmed.

---

4. "Privilege must be pleaded as an affirmative defense to an action for libel * * except where the existence of the privilege is disclosed on the face of the complaint." Locke v. Mitchell, 7 Cal.2d 599, 602, 61 P.2d 922, 923.

5. "A privileged publication * * * is one made——

*     *     *     *     *

"3. In a communication, without malice, to a person interested therein * * [by one] (3) who is requested by the person interested to give the information." California Civil Code, § 47.